



**FILED**

Jun 20 2018, 10:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 18S-CR-329

## Adrian Durden
*Appellant (Defendant)*

–v–

## State of Indiana
*Appellee (Plaintiff)*

---

Argued: December 19, 2017 | Decided: June 20, 2018

Appeal from the Marion Superior Court
Nos. 49G05-1505-MR-17228
49G05-1506-F5-19402
49G05-1506-F5-19449
49G05-1506-F5-20230
The Honorable Grant W. Hawkins, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 49A02-1701-CR-188

---

**Opinion by Justice Massa**

Chief Justice Rush, Justice David, Justice Slaughter, and Justice Goff concur.

**Massa, Justice**

Criminal defendants enjoy a constitutional right to an impartial jury. U.S. Const. amend. VI; Ind. Const. Art. 1, § 13. This right "is a structural guarantee," *Carella v. California*, 491 U.S. 263, 268 (1989) (Scalia, J., concurring), and its "infraction can never be treated as harmless error." *Gray v. Mississippi*, 481 U.S. 648, 668 (1987) (internal quotation marks omitted). But is reversal necessary when the violation resulted directly from the defendant's affirmative actions at trial?

In this case, defense counsel expressly agreed to the trial court's constitutionally-defective procedure for removing and replacing a juror after deliberations had begun, ultimately compromising the defendant's right to an impartial jury. Because we find that the defendant here invited the error as part of a deliberate trial strategy, we affirm his conviction.

# Facts and Procedural History

Adrian Durden's first trial for murder resulted in a hung jury. He was tried a second time for murder along with eight drug-related charges. Just under two hours after the jury had begun its deliberations, one of the jurors—Juror 12—sent a note to the court requesting to be excused from service because she "[could] not agree quickl[y] on the charges [or] come to a decision on the charges." Appellant's App. Vol. IV, p.64. Counsel from both sides then met with the trial judge in chambers and off the record to discuss what to do. Returning to open court, defense counsel and the State's attorney both agreed to replace Juror 12 with the second alternate juror if the jury had yet to reach a verdict on any count.[1] However, Durden's lawyer expressed a preference for keeping Juror 12 if the panel had "reached verdicts on some of the counts." Tr. Vol. IV, p.177. The court, after commenting that Juror 12 was "subverting the integrity of

---

[1] The court and counsel agreed to the second alternate juror instead of the first so that they "would be guaranteed of one African-American on [the] jury." Tr. Vol. IV, p.177. *See Batson v. Kentucky*, 476 U.S. 79, 97 (1986) (prohibiting racial discrimination in the selection of jurors).

the process," stated that "in a situation like this we all have to agree." *Id.* at 177–78.

With consent from defense counsel and the State's attorney, the court then summoned the jury foreman, who—after acknowledging, without elaboration, Juror 12's request to withdraw—stated that the jury had agreed on six drug counts but was "waiting to do" the murder charge. *Id.* at 177–79. The court then instructed the foreman not to discuss his testimony with the other jurors. After consulting with his client, Durden's lawyer informed the court that they were "not opposed to having [Juror 12] excused, being replaced by the second alternate." *Id.* at 180. The judge asked whether defense counsel had "any caveats" or special instructions for the jury. *Id.* at 180–81. Defense counsel declined, replying that he "[could]n't think of anything" and "that's why there's an alternate, I guess." *Id.* at 181. To clarify the procedure, the judge then asked whether he should simply "go in there" to excuse Juror 12, thank her for her service, and then instruct the alternate to participate in deliberations. *Id.* "I think the less traumatic it is the better," defense counsel replied, "I prefer it that way." *Id.* at 181–82. "I kind of needed your permission if I'm not doing it on the record," the judge stated, seeking assurance. *Id.* at 182. "Yes," defense counsel replied affirmatively. *Id.* "Then that's what we'll do," the judge responded. *Id.*

The court then replaced Juror 12 with the second alternate. When the foreperson asked whether "they were supposed to go over the counts on which they'd already reached a verdict," the court responded that "you are the jury. You decide that." *Id.* at 184. The jury then resumed its deliberations, ultimately finding Durden guilty on all counts.

Durden appealed his murder conviction, arguing that, despite his acquiescence, the court's procedure violated his constitutional right to an

impartial jury, thus resulting in reversible error.[2] Durden specifically faulted the court for (1) failing to interview Juror 12 to determine the grounds for her removal; (2) arbitrarily designating the second alternate juror in lieu of the first alternate, contrary to Indiana Trial Rule 47(B);[3] and (3) neglecting to admonish the remaining jurors to avoid any prejudicial effect removal may have had on further deliberations.

Our Court of Appeals reversed Durden's conviction, finding Juror 12's removal "unjustified" and thus "structural error" under *Riggs v. State*, 809 N.E.2d 322 (Ind. 2004). *Durden v. State*, 83 N.E.3d 1232, 1237 (Ind. Ct. App. 2017), *vacated*. Contrary to the procedural requirements set forth in *Riggs*, the panel concluded, the record here failed to show (1) whether the court questioned Juror 12 to determine the grounds for her removal and (2) whether the remaining jurors received instructions to preserve their impartiality. *Id.* at 1236–37. Because "structural error defies analysis by harmless error standards," the panel concluded, Durden was entitled to a new trial without the need to show prejudice. *Id.* at 1237.

We now grant the State's petition to transfer, thus vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).

## Standard of Review

Trial courts have broad discretion in deciding whether to remove and replace a juror *before* deliberations have begun and, in such circumstances, we reverse only for an abuse of discretion. *Riggs*, 809 N.E.2d at 327. A trial court's decision to remove and replace a juror *after* commencement of deliberations likewise requires a deferential standard of review; however,

---

[2] Although Durden argued on appeal that the trial court's procedure amounted to "fundamental" error, he relied largely on this Court's decision in *Riggs v. State*, which refers to unjustified removal of a juror as "structural" error. 809 N.E.2d 322, 328 (Ind. 2004). We discuss the differences between these two error doctrines in Section I.B., *infra*.

[3] Under Indiana Trial Rule 47(B), "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury returns its verdict, become . . . unable or disqualified to perform their duties."

the decision at that point "raises a number of considerations" implicating the defendant's right to an impartial jury and a unanimous verdict. *Id.* Under these circumstances, we apply a heightened standard of review, reversing for an abuse of discretion resulting in the denial of a fair trial. An abuse of discretion in this context arises when the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law," *Carpenter v. State*, 786 N.E.2d 696, 703 (Ind. 2003), or if the decision "was so prejudicial to the rights of the defendant that a fair trial was impossible," *Boatright v. State*, 759 N.E.2d 1038, 1042 (Ind. 2001).

Beyond the issue of juror removal, this case implicates the scope of our invited-error doctrine, a question of law over which we exercise de novo review. *See Horton v. State*, 51 N.E.3d 1154, 1157 (Ind. 2016).

## Discussion and Decision

There is no dispute here that the trial court's actions fell short of *Riggs*' procedural requirements for juror removal after deliberations had begun.[4] The question is whether the court's error compels a new trial or whether Durden's acquiescence to the removal precludes such a remedy.

To resolve this case, we first lay a contextual foundation by examining the preservation doctrine and the various error doctrines—harmless, fundamental, and structural—that determine the scope of appellate review. We must then decide where along this doctrinal spectrum the error in this case ultimately falls and whether our invited-error doctrine permits or precludes appellate review.

---

[4] Had Durden objected to the removal, the State acknowledged at oral argument, and had the trial court overruled that objection, "reversal would be required." Oral Arg. Video Tr. at 2:45–3:08.

# I.  Scope of Appellate Review

Criminal defendants enjoy a constitutional right to a "fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). Indeed, errors pervade nearly every corner of the law—some passing by unnoticed, others drawing vigorous objection and protracted litigation. Roger J. Traynor, *The Riddle of Harmless Error* ix (1970). The challenge for courts, whether at the trial level or on appeal, is in distinguishing the harmless error from the prejudicial one. *Id.* at 3.

## A.  Waiver and Invited Error

As a preliminary inquiry, appellate courts must first determine whether the appellant properly preserved the alleged error at the trial level. To preserve a claim for review, counsel must object to the trial court's ruling and state the reasons for that objection. *See Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013). This gives the court an opportunity to cure the alleged error, which, in turn, "can result in enormous savings in time, effort and expense to the parties and the court, including avoiding an appeal and retrial." *State v. Daniels*, 680 N.E.2d 829, 835 (Ind. 1997). If the trial court overrules the objection, the appellate court benefits from a sufficiently-developed record on which to base its decision. Yuval Simchi-Levi, *Preservation: What Is It Good For?*, 37 Pace L. Rev. 175, 180–81 (2016).

A party's failure to object to an alleged error at trial results in waiver, also known as "procedural default" or "forfeiture." *Bunch v. State*, 778 N.E.2d 1285, 1287 (Ind. 2002). While there are certain exceptions to this rule, *see infra* Section I.B., it's designed to promote fairness "by preventing a party from sitting idly by," ostensibly agreeing to a ruling "only to cry foul" when the court ultimately renders an adverse decision. *Hale v. State*, 54 N.E.3d 355, 359 (Ind. 2016).

When the failure to object accompanies the party's affirmative requests of the court, "it becomes a question of invited error." *Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014). This doctrine—based on the legal principle of estoppel—forbids a party from taking "advantage of an error that she commits, invites, or which is the natural consequence of her own neglect

or misconduct." *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005). The doctrine may apply to a variety of errors the party requested of the trial court, such as the adoption of an erroneous jury instruction or the admission of evidence prejudicial to the defendant. *See, e.g., Brantley v. State*, 91 N.E.3d 566, 573 (Ind. 2018); *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995).

## B. The Spectrum of Trial Court Errors

While the waiver doctrine advances important policies of judicial efficiency, "mere expediency is not an appropriate appellate goal." *Thomas v. Thomas*, 577 N.E.2d 216, 218 (Ind. 1991). "The objectives of trial procedure are to secure determinations that are not only speedy and inexpensive but also just." *Id.* (citing Ind. Trial Rule 1). And so, while "the prudent lawyer will always provide a contemporaneous objection at trial so as to preserve an issue for appeal, there are occasional exceptions to this general rule." *Verhorn v. State*, 717 N.E.2d 869, 872–73 (Ind. 1999).

### 1. Harmless Error

Harmless trial errors fall at one end of our "broad spectrum." *Brecht v. Abrahamson*, 507 U.S. 619, 640 (1993) (Stevens, J., concurring). An error is harmless when it results in no prejudice to the "substantial rights" of a party. *Camm v. State*, 908 N.E.2d 215, 225 (Ind. 2009); Ind. Trial Rule 61.[5] While there are important contextual variations to this rule,[6] the basic premise holds that a conviction may stand when the error had no bearing

---

[5] Indiana Trial Rule 61 requires courts, "at every stage of the proceeding," to "disregard any error or defect" that "does not affect the substantial rights of the parties." Likewise, under Indiana Appellate Rule 66(A), "[n]o error or defect" in a trial court ruling "is ground for granting relief or reversal on appeal" when "its probable impact . . . is sufficiently minor so as not to affect the substantial rights of the parties."

[6] For example, an error of a federal-constitutional dimension (rather than a statutory error) requires the State to prove beyond a reasonable doubt that the alleged error had no effect on the outcome of the case. *Chapman v. California*, 386 U.S. 18, 22, 24 (1967); *Bush v. State*, 775 N.E.2d 309, 311 (Ind. 2002).

on the outcome of the case. At its core, the harmless-error rule is a practical one, embodying "the principle that courts should exercise judgment in preference to the automatic reversal for error and ignore errors that do not affect the essential fairness of the trial."[7] *United States v. Harbin*, 250 F.3d 532, 546 (7th Cir. 2001) (internal quotation marks omitted).

## 2. Fundamental Error

Further along the spectrum are errors we deem "fundamental." An error is fundamental, and thus reviewable on appeal, if it "made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014) (internal quotation marks omitted). These errors create an exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). This exception, however, is "extremely narrow" and encompasses only errors

---

[7] An early twentieth-century legal innovation, the harmless-error rule developed in response to the strict presumption of prejudice adopted by a majority of appellate courts in the United States requiring automatic reversal for virtually any error, no matter how trivial. Roger A. Fairfax, Jr., *A Fair Trial, Not a Perfect One: The Early Twentieth-Century Campaign for the Harmless Error Rule*, 93 Marq. L. Rev. 433, 436 (2009). This approach often "led to absurd results, such as granting convicted murderers new trials because of the misspelling of non-essential words or other typographical errors in the indictment." *Id.* (citing cases). "So great was the threat of reversal, in many jurisdictions," the U.S. Supreme Court explained, "that criminal trial became a game for sowing reversible error in the record, only to have repeated the same matching of wits when a new trial had been thus obtained." *Kotteakos v. United States*, 328 U.S. 750, 759 (1946).

Indiana's harmless-error rule, now codified at Trial Rule 61, evolved from case law and statutes dating back to the late nineteenth century. *See, e.g.*, *Smith v. Denman*, 48 Ind. 65, 70 (1874) ("If error was committed, it was a harmless one, as it did not in any manner prejudice the right of the appellants."). The state's first harmless-error statute appeared in 1881, adopted in terms nearly identical to its modern counterpart. *See* 1881 Ind. Acts 240, 264 ("The Court must in every stage of the action disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party, and no judgment can be reversed or affected by reason of such error or defect."). *See also id.* at 357–58 (applying same rule to an appellate court).

so blatant that the trial judge should have acted independently to correct the situation. *Id.* At the same time, "if the judge could recognize a viable reason why an effective attorney might not object, the error is not blatant enough to constitute fundamental error." *Brewington*, 7 N.E.3d at 974.

### 3. Structural Error

At the end of our spectrum lies "a limited class of fundamental constitutional errors that defy analysis by harmless error standards," thus requiring automatic reversal without the need to show prejudice.[8] *Neder v. United States*, 527 U.S. 1, 7 (1999) (internal quotation marks omitted). These errors, known as "structural errors," affect "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).

Some structural errors, such as the deprivation of counsel or defective reasonable-doubt instructions, always result in prejudicial harm to the defendant. *Weaver v. Massachusetts*, ⸺ U.S. ⸺, 137 S. Ct. 1899, 1908 (2017) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Sullivan v. Louisiana*, 508 U.S. 275 (1993)). However, a structural error need "not lead to fundamental unfairness in every case." *Id.* Structural error may arise when it threatens an interest *other than* protecting the defendant against wrongful conviction. *Id.* at 1910 (noting that the denial of a right to a public trial may inhibit the First Amendment interests of the press and of the public at large). Structural error also results if "the precise effect of the violation cannot be ascertained." *Id.* at 1908 (internal quotation marks

---

[8] This "limited class" of errors includes the deprivation of the right to counsel at trial, the lack of an impartial judge, racial discrimination in grand jury selection, denial of the right to *pro se* representation, and denial of the right to a public trial. *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (citing, respectively, *Gideon v. Wainwright*, 372 U.S. 335 (1963); *Tumey v. Ohio*, 273 U.S. 510 (1927); *Vasquez v. Hillery*, 474 U.S. 254 (1986); *McKaskle v. Wiggins*, 465 U.S. 168 (1984); *Waller v. Georgia*, 467 U.S. 39 (1984)). *See also Sullivan v. Louisiana*, 508 U.S. 275 (1993) (defective reasonable-doubt instructions amount to structural error); *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) (structural error results from deprivation of counsel of one's choice). For examples of constitutional errors held subject to harmless-error analysis, see *Fulminante*, 499 U.S. at 306–07.

omitted) (providing example of when a defendant is denied the right to an attorney of his or her choice).

## II. Application of the Invited-Error Doctrine to Claims of Structural Error

The State argues that Durden's affirmative agreement with the court's procedure to remove and replace Juror 12, for whatever strategic reason, waived fundamental-error review. The State further contends that, while the procedure here "was not consistent with the procedures laid out by this Court" in *Riggs*, Durden's actions justified removal, thus precluding structural error. Pet. to Trans. at 9.

Durden, in response, argues that, despite his acquiescence, "the procedure adopted by the trial court to avoid a mistrial" violated his constitutional right to an impartial jury and a unanimous verdict.[9] Resp. to Pet. to Trans. at 7. He rejects the State's assertion that agreeing to Juror 12's removal amounted to a rational trial strategy. The court's removal without justification was "clearly structural error," he insists, and there is no basis for the State's contention that a defendant can waive or invite such error. *Id.* at 6.

### A. The trial court's deficient record resulted in structural error.

Once jury deliberations begin, a court is justified in discharging a juror "only in the most extreme situations." *Riggs*, 809 N.E.2d at 327. Under these circumstances, the court must demonstrate, through a carefully-developed record, that removal "is necessary for the integrity of the

---

[9] While the U.S. Supreme Court "has never held jury unanimity to be a requisite of due process of law" in state criminal trials, *Johnson v. Louisiana*, 406 U.S. 356, 359 (1972), Indiana "has long required that a verdict of guilty in a criminal case 'must be unanimous.'" *Baker v. State*, 948 N.E.2d 1169, 1173–74 (Ind. 2011) (quoting *Fisher v. State*, 259 Ind. 633, 646, 291 N.E.2d 76, 82 (1973)).

process, does not prejudice the deliberations of the rest of the panel, and does not impair the parties['] right to a trial by jury." *Id.* at 327–28. The court must also (1) avoid questions that affect the juror's judgment, in case he or she continues to serve; and (2) in the event of removal, take steps to minimize any prejudicial impact removal may have had on the remaining jurors. *Id.* at 329.

Here, the trial court expressed concern with Juror 12 "subverting the integrity of the process." Tr. Vol. IV, pp. 177–78. But the scant record gives us little to validate that concern. In fact, the juror's note indicated at least an attempt at fulfilling her duties, not a combative disposition toward the panel or other "extreme modes of conduct." *Riggs*, 809 N.E.2d at 328. A failure to "agree quickl[y] on the charges," standing alone, provides no grounds for removal. *See id.*

In the event of an impasse like this, our trial rules permit a court, in consultation with counsel and in the presence of the parties, to "determine whether and how [it] can assist [the jurors] in their deliberative process." Ind. Jury Rule 28. But there is nothing to indicate that the trial court here made such an effort. *See Scott v. State*, 829 N.E.2d 161, 168 (Ind. Ct. App. 2005) (failure to interview juror resulted in a record insufficient to justify removal after deliberations had begun). And in the absence of that evidence, we have no way of determining whether Juror 12's conduct justified removal. *See Riggs*, 809 N.E.2d at 328.

The record likewise fails to disclose whether the court, upon removing Juror 12, took precautionary steps to assess and minimize any prejudicial impact removal had on the remaining jurors. *See Riggs*, 809 N.E.2d at 329; *Wright v. State*, 12 N.E.3d 314, 320 (Ind. Ct. App. 2014). By ordering the foreman earlier not to discuss the matter with the other jurors, the court appears to have taken preliminary steps to avoid conveying any improper message. But the trial court apparently stopped there—simply excusing Juror 12, directing the second alternate to participate, and providing no further instructions to maintain the panel's "ability to reach a fair and impartial verdict." *Riggs*, 809 N.E.2d at 329 (internal quotation marks omitted).

For these reasons, we conclude that the trial court's failure to properly comply with the developed-record requirements set forth in *Riggs* amounted to structural error.[10]

This conclusion, however, does not end our inquiry. While the "right to an impartial jury is the sort of right that requires automatic reversal when denied," the "nature, context, and significance of a violation may determine" otherwise. *Harbin*, 250 F.3d at 548 (internal quotation marks omitted).

## B. The invited-error doctrine precludes a remedy for Durden's claim of structural error.

"The procedure adopted by the trial court to avoid a mistrial was an egregious abuse of the right to a trial by jury," Durden asserts, "whether acquiesced in or not." Resp. to Pet. to Trans. at 7. He argues that there is no authority that removes the error here from the scrutiny of structural-error review. According to Durden, there simply are no circumstances under which structural error permits anything other than reversal.

---

[10] We rest our conclusion here upon the inability to measure the error's effect, which is one of "three broad rationales for finding an error to be structural." *Weaver*, 137 S. Ct. at 1903. *See also Vasquez*, 474 U.S. at 263 (observing that "the effect of the violation cannot be ascertained" when a "petit jury has been selected upon improper criteria or has been exposed to prejudicial" factors); *United States v. Gaya*, 647 F.3d 634, 639 (7th Cir. 2011) (structural error arises when it becomes difficult if not impossible to determine "how the trial might have gone had the error not been committed"). In the absence of a record demonstrating the jury's ability to reach an impartial verdict, harmless-error analysis simply becomes a futile, "speculative inquiry into what might have occurred in an alternate universe." *Gonzalez-Lopez*, 548 U.S. at 150. Even if removal were justified here, the deficient record fails to indicate otherwise and thus compels our finding of structural error. *See Riggs*, 809 N.E.2d at 327 (holding that the "record is not sufficient to support removal of a juror after deliberations have begun").

We disagree and find "no reason to exempt 'structural errors'" from the invited-error doctrine.[11] *United States v. Gaya*, 647 F.3d 634, 640 (7th Cir. 2011).

As a general rule, the denial of a defendant's right to an impartial jury requires automatic reversal. *Gray*, 481 U.S. at 668. But as with all general rules, even structural rights are "subject to exceptions." *Weaver*, 137 S. Ct. at 1909. Only "where there is an *objection* at trial and the issue is raised on direct appeal" is the defendant "entitled to automatic reversal regardless of the error's actual effect on the outcome." *Id.* at 1910. (emphasis added) (internal quotation marks omitted). If, however, the "defendant does not preserve a structural error on direct review," then he "generally bears the burden" of showing prejudice.[12] *Id*.

The absence of counsel's objection defeats the policy aims of our preservation doctrine: "the trial court is deprived of the chance to cure the

_____

[11] We note that our decision today corresponds with decisions from several other states to have addressed the issue presented here, either as a general rule or in the context of other structural errors. *See, e.g.*, *Ex parte Thuesen*, No. WR-81584-01, 2018 WL 1179875, at *5 (Tex. Crim. App. Mar. 7, 2018) ("This Court and other courts often apply the doctrine of invited error to rule against defendants on a wide variety of matters, including errors that might amount to fundamental or structural errors."); *State v. Cassano*, 772 N.E.2d 81, 95 (Ohio 2002) (concluding that the trial court erred in closing a hearing to the public absent specific findings justifying such closure but declining reversal since the defendant invited the error by requesting the closure to begin with in an effort to avoid prejudicial publicity); *State v. Benton*, 858 N.W.2d 535, 540 (Minn. 2015) (declining to decide whether the trial court committed structural error by granting defendant's courtroom closure requests since the alleged errors were invited by the defendant "and did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings").

[12] Decisions from both the U.S. Supreme Court and this Court applying the waiver doctrine to other structural errors lend further support for our decision. *See, e.g.*, *Waller v. Georgia,* 467 U.S 39, 42 n.2 (1984) (acknowledging that, when a defendant consents to a courtroom closure, he may be "procedurally barred from seeking relief as a matter of state law"); *Faretta v. California*, 422 U.S. 806, 807, 834 n.46 (1975) (noting that, while "a defendant in a state criminal trial has a constitutional right to proceed without counsel," he "cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel") (internal quotation marks omitted). *See also Stephenson v. State*, 864 N.E.2d 1022, 1030 (Ind. 2007) (foreclosing defendant's claim, in a post-conviction proceeding, that his appearance in a stun belt before the jury constituted structural error since defendant failed to object at trial or raise the issue on direct appeal).

violation," "the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases," and the "finality interest is more at risk." *Weaver*, 137 S. Ct. at 1912.[13] *See also Whiting v. State*, 969 N.E.2d 24, 32 (Ind. 2012) (declaring that the "policies justifying proper preservation of nonstructural claims apply with equal force to structural claims").[14]

Here, Durden did far more than simply fail to object to the procedure he now complains of; his defense counsel expressly declined "any caveats" or special instructions for the jury and repeatedly assured the court of his approval of the procedure employed, despite its defects. Durden and his counsel were in the best position to observe Juror 12 throughout the trial and to make a reasoned decision whether to keep her on the jury. Based on the record before us, we can only conclude that Durden decided to engage in a rational, albeit unsuccessful, trial strategy.[15] Any other conclusion runs contrary to our "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" at trial. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

---

[13] The decision in *Weaver* applied to a structural error raised as an ineffective-assistance-of-counsel claim, rather than a structural error preserved and then raised on direct review. *See* 137 S. Ct. at 1912. However, the Court's reasoning for requiring a defendant to show prejudice in the former context suggests that the same showing of prejudice is necessary in the latter context. *See id.* (explaining that, when a defendant objects to a structural error at trial, the court can cure the defect, but when a defendant first raises the error in an ineffective-assistance claim, the trial court is deprived of such an opportunity).

[14] Although *Whiting* involved a prospective juror, we consider the rationale in that case apposite. There, defense counsel knew of the juror's bias during *voir dire* but, after the trial court denied a joint challenge for cause, neither party exercised a peremptory strike to remove the juror, ultimately leading to her empanelment. 969 N.E.2d at 27. On appeal of her conviction, we held that Whiting, by failing to exhaust her peremptory challenges, had waived her claim of structural error—the seating of a biased juror. *Id.* at 35.

[15] Because defense counsel agreed to the second alternate juror in lieu of the first, we likewise conclude that Durden waived his argument that the trial court violated Indiana Trial Rule 47(B).

# Conclusion

In exercising our discretion to review a constitutional claim, we recognize that there may be some circumstances where the invited-error doctrine must yield to the interests of justice. *See, e.g.*, *Collins v. State*, 835 N.E.2d 1010, 1017 (Ind. Ct. App. 2005) (holding that "an illegal sentence that is invited nevertheless is subject to the fundamental error exception"). The decision we reach in this case, however, properly elevates the invited-error doctrine despite the structural right compromised by the trial court's removal procedure. To hold otherwise would permit Durden to attack his conviction based on an error that he and his defense counsel expressly agreed to as part of a deliberate trial strategy.

For the reasons set forth above, we affirm Durden's conviction.

Rush, C.J., and David, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT
Ruth Ann Johnson
Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana