## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 07 2018, 6:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill
Attorney General

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Diamonte William Baker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 7, 2018

Court of Appeals Case No.
79A02-1711-CR-2640

Appeal from the Tippecanoe Superior Court

The Honorable Donald L. Daniel, Senior Judge

Trial Court Cause No.
79D02-1701-F1-1

**Crone, Judge.**

# Case Summary

[1] Diamonte William Baker appeals his convictions for level 1 felony attempted murder, level 5 felony domestic battery by means of a deadly weapon, level 6 felony intimidation, and class A misdemeanor false informing. He asserts that the trial court committed fundamental error in instructing the jury. He also asserts that the trial court abused its discretion in imposing a sanction for his contempt of court, and further that his convictions violate double jeopardy. We conclude that the trial court did not commit fundamental error and that Baker has waived any error regarding the trial court's contempt sanction. However, because we conclude that his domestic battery conviction must be vacated to remedy a double jeopardy violation, we remand to the trial court with instructions to vacate that conviction and sentence. In all other respects, we affirm.

# Facts and Procedural History

[2] Baker met Stephanie Miller in September 2016. They began a romantic relationship, and Baker moved into Miller's apartment the following month. On January 22, 2017, after the pair had an argument, Miller tried to exit the apartment. However, Baker blocked her by standing in front of the door. When Miller turned her back on Baker, he stabbed her in the back with "a survival knife." Tr. Vol. 3 at 21. He stabbed her in the middle of the spine, and it hurt "really bad." *Id*. When Miller realized that Baker had stabbed her, she asked him why he would do that, but Baker "didn't really say anything." *Id*. Because there was a lot of blood and believing that she might bleed to death,

Miller immediately told Baker to call 911. Baker did nothing other than to continue to block the doorway.

[3] Miller tried to lay on the floor to reduce her blood loss, and she also tried to call 911 using her own phone, but "too much blood was preventing [her phone] from working." *Id*. at 22. She then began "scrambling around" the kitchen to find something to "cauterize" her wound because she could feel "a lot" of blood coming out. *Id*. When she knelt on the floor by a blanket, Baker came up behind Miller and used the knife to slice the left side of her throat. *Id*. Baker said to Miller, "[B]itch, I'm not trying to help you, I'm trying to kill you." *Id*. at 23. Baker took the blanket and tried to suffocate her, but she pushed him away, and then he pushed her to the ground.

[4] Miller pleaded with Baker to help her, telling him, "I'm gonna die. I'm bleeding to death." *Id*. at 24. Baker began pacing back and forth "like he was thinking … like what to do." *Id*. Baker came up with the story that they would "say somebody broke in." *Id*. Miller agreed with the plan so that she could get help. Baker used his knife to put three superficial cuts on his stomach so that it would look like he was also attacked.

[5] Miller and Baker ran outside and began yelling for help, but it seemed like none of their neighbors were home. Shortly thereafter, one of their neighbors, Cheryl Revels, pulled up in her car. Revels, who is a nurse, went with Miller and Baker back into their apartment and helped Miller until police and an ambulance arrived. When police arrived and asked Miller what happened,

Miller told them, "Somebody broke in, I got stabbed." *Id*. at 28. Baker led the investigating officers to believe that a drug dealer, Terry Wheatley, was the stabbing suspect. Because Baker was nearby, Miller was afraid to tell the police the truth. Officers immediately sought out Wheatley and quickly determined that he had nothing to do with the incident.

[6] Meanwhile, Miller was transported by ambulance to a hospital in Lafayette. As soon as she was alone with other police officers, she revealed that Baker had stabbed her. The doctor who treated Miller observed that she had "two stab wounds plus some abrasions [and] bruises." *Id*. at 58. The doctor surmised that neither stab wound could have been self-inflicted. The stab wound to Miller's back, in particular, was inflicted with great force and, if left untreated, created a substantial risk of death. *Id*. at 59. Police subsequently executed a search warrant on Miller's apartment and found a bloody knife, blanket, and seat cushion. Both Miller's and Baker's DNA were found on the knife and the blanket.

[7] When Baker was informed that he was being charged with multiple felonies, he yelled at an officer, "[Y]ou fat ass b**ch, I'm gonna beat your ass." Tr. Vol. 2 at 185. Baker proceeded to punch a plexiglass window. During his police interview, Baker told police that at the time of the incident, he and Miller were fighting, that she was acting aggressively and tried to stab him, and that he inadvertently stabbed her in the back and neck during a struggle for the knife. Baker admitted that it was his idea to blame Wheatley for the incident. While in jail, Baker telephoned Miller. Miller was very upset because she had heard

that Baker had blamed the incident on her and said that she had tried to stab him. Baker denied telling the police that she had tried to stab him and told her that he thought the authorities were just trying to split them up.

[8] The State charged Baker with nine felonies. A jury found Baker guilty as charged. The trial court merged several of the counts and entered judgment of conviction on four of the counts, including level 1 felony attempted murder, level 5 felony domestic battery by means of a deadly weapon, level 6 felony intimidation, and class A misdemeanor false informing. The court sentenced Baker to forty years for attempted murder, six years for domestic battery, two years for intimidation, and six months for false informing, to be served concurrently, resulting in a forty-year aggregate sentence. This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court did not commit fundamental error in instructing the jury.

[9] Baker first asserts that the trial court committed fundamental error in reading to the jury the State's tendered jury instruction number one, which provided, "[T]he uncorroborated testimony of a single witness, even if that witness is the victim, is sufficient to sustain a conviction." Appellant's App. Vol 2 at 107, 148. The State acknowledges that in *Ludy v. State*, 784 N.E.2d 459 (Ind. 2003), our supreme court determined that this type of instruction should not be given because it unfairly focuses the jury's attention on and highlights a single witness's testimony; it presents a concept used in appellate review that is

irrelevant to the jury's role as factfinder; and the technical term "uncorroborated" may mislead or confuse the jury. *Id.* at 461. The court reasoned that "[t]o expressly direct a jury that it may find guilt based on the uncorroborated testimony of a single person is to invite it to violate its obligation to consider all the evidence." *Id.* at 462.

[10] Baker concedes that his counsel failed to object to the instruction, and such failure normally results in waiver and precludes appellate review unless fundamental error has occurred. *Baker v. State*, 948 N.E.2d 1169, 1178 (Ind. 2011). The question, then, is whether the instruction was fundamentally erroneous. The fundamental error doctrine is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, "not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). Indeed, our supreme court very recently explained,

> An error is fundamental, and thus reviewable on appeal, if it "made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." These errors create an exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal. This exception, however, is "extremely narrow" and encompasses only errors so blatant that the trial judge should have acted independently to correct the situation.

*Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (citations omitted).

[11] We conclude that the challenged instruction did not rise to the level of fundamental error. Instructional errors are rendered harmless where a conviction is clearly sustained by the evidence and the instruction would not likely have impacted the jury's verdict. *Randolph v. State*, 802 N.E.2d 1008, 1013 (Ind. Ct. App. 2004), *trans. denied*. Baker argues that "no one is disputing that Miller was stabbed" but there were "two versions of what occurred" and the erroneous instruction told the jury to accept Miller's version in determining that he intended to kill her when he stabbed her. Appellant's Br. at 18. However, despite the erroneous emphasis on uncorroborated victim testimony, there was ample evidence in the record that corroborated Miller's version of events as opposed to Baker's claim that the wounds were inflicted inadvertently during a struggle. Miller's treating doctor testified that the wound to her back was six inches deep and that it would have required a "significant" amount of force, such as "a full swing of the arm." Tr. Vol. 3 at 61. Similarly, the doctor testified that the throat wound was six inches long and three inches deep and was inflicted from the side or behind. This testimony is consistent with Miller's version of events and totally inconsistent with Baker's claims. *See Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008) (noting that specific intent to kill for attempted murder "may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury."). In light of the testimony and other evidence presented at trial, we find it unlikely that the erroneous

instruction impacted the jury's verdict. We therefore conclude that the instruction did not constitute fundamental error.[1]

## Section 2 – Baker has waived any error regarding the trial court's imposition of a contempt sanction.

[12] Upon motion by the State, the trial court issued an order for Baker, who was in jail awaiting trial, to provide the State a sample for DNA testing. After Baker twice refused to submit to a buccal swab when requested by law enforcement pursuant to the court order, the State filed a petition for contempt. Following a hearing held fifteen days after the original court order, the trial court found Baker in contempt for failing to comply with the court order and ordered as a sanction that Baker be denied good time credit for the fifteen days of pretrial incarceration. During sentencing following trial, the court calculated Baker's credit time accordingly.

[13] On appeal, Baker contends that the trial court's imposition of this contempt sanction constituted an abuse of discretion. However, Baker has waived our review of the propriety of the sanction because he failed to object to the trial court's decision in this regard at any time during court proceedings.

> To preserve a claim for review, counsel must object to the trial court's ruling and state the reasons for that objection. This gives

---

[1] Baker briefly mentions the State's instruction number three, but fails to adequately develop any argument as to how the instruction was erroneous. Accordingly, this issue is waived. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring argument be supported by cogent reasoning with citations to authority); *Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (failure to present a cogent argument or citation to authority constitutes waiver of issue for appellate review).

the court an opportunity to cure the alleged error, which, in turn, can result in enormous savings in time, effort and expense to the parties and the court, including avoiding an appeal and retrial. If the trial court overrules the objection, the appellate court benefits from a sufficiently-developed record on which to base its decision. A party's failure to object to an alleged error at trial results in waiver, also known as procedural default or forfeiture. While there are certain exceptions to this rule, it's designed to promote fairness by preventing a party from sitting idly by, ostensibly agreeing to a ruling only to cry foul when the court ultimately renders an adverse decision.

*Durden*, 99 N.E.3d at 651 (citations and quotation marks omitted). Baker sat idly by during the contempt hearing when the trial court announced its intention to deny him fifteen days of good time credit as a contempt sanction. He similarly did not draw the court's attention to any error during the sentencing hearing, even after the State specifically referenced the sanction. Indeed, when asked by the trial court for input regarding the contempt sanction and its effect on the good time credit calculation, Baker's counsel indicated that he agreed with the State. Tr. Vol. 3 at 172. Under the circumstances, Baker has waived our review of this issue.[2]

## Section 3 – Baker's convictions for attempted murder and domestic battery violate double jeopardy.

As a final matter, Baker complains that, in addition to attempted murder, the trial court "entered judgment of conviction" on five counts of battery and one

---

[2] Baker makes no argument that the court's contempt sanction constituted fundamental error.

count of criminal recklessness, and that "double jeopardy prohibits simultaneous convictions thereon." Appellant's Br. at 23. Our review of the trial court's sentencing order and abstract of judgment reveals that the trial court merged four of the battery convictions as well as the criminal recklessness conviction into the attempted murder conviction, and specifically vacated those lesser convictions. Therefore, we need only address Baker's assertion that his convictions for attempted murder and domestic battery by means of a deadly weapon, as alleged in Count IV, violate double jeopardy, because they both are premised upon his same act of stabbing Miller. The State concedes that they do, and we summarily agree.[3] Accordingly, we remand to the trial court with instructions to vacate Baker's conviction and sentence for domestic battery.[4]

[15] Affirmed and remanded.

Bailey, J., and Brown, J., concur.

---

[3] Citing common law double jeopardy rules, including the one which prohibits "[c]onviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished," *see Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002), the State says, "Here, it is apparent that the jury could have relied on the stabbing of Miller alleged in Count I to also find that Baker touched Miller with a knife in a rude, insolent, or angry manner as alleged in Count IV. Therefore, the State does not oppose Baker's request for the conviction on Count IV to be vacated." Appellee's Br. at 21 (citation omitted).

[4] Because Baker's sentence for domestic battery was ordered to be served concurrent with his sentence for attempted murder, his aggregate sentence of forty years remains unchanged.