## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 25 2019, 9:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Andrew J. Stone,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 25, 2019

Court of Appeals Case No.
18A-CR-2611

Appeal from the Martin Circuit Court

The Honorable Lynne E. Ellis, Judge

Trial Court Cause No.
51C01-1801-F5-15

**Vaidik, Chief Judge.**

# Case Summary

[1] Andrew J. Stone was convicted of Level 6 felony resisting law enforcement and Level 5 felony battery resulting in bodily injury to a public-safety official. He now appeals, arguing that the State failed to rebut his Castle Doctrine affirmative defense. Stone, however, did not raise this affirmative defense at trial or establish a basis for it. Accordingly, we affirm his convictions.

# Facts and Procedural History

[2] On January 18, 2018, Major Thomas Burkhardt with the Martin County Sheriff's Department was serving civil process near Doe Run, a subdivision in Shoals, when he passed Stone driving a truck with Isabella Goodpaster as his passenger. Major Burkhardt knew that Stone did not have a valid driver's license and that Isabella had a protective order against him. Major Burkhardt continued serving process but radioed dispatch to confirm that Stone's driver's license was invalid and that the protective order was active. After confirming these things, Major Burkhardt contacted James Roush, the Sheriff of Martin County, and Sheriff Roush said he would look for Stone while Major Burkhardt finished serving process.

[3] Sheriff Roush and Stone each lived in Doe Run. Planning to intercept Stone on his way home, Sheriff Roush parked his patrol car at the county highway garage, which is directly across from Doe Run. After waiting about an hour, Sheriff Roush decided to return to the jail. As Sheriff Roush was driving back,

Stone drove past him in a truck. Sheriff Roush completed a three-point turn, which took about fifteen to twenty seconds, so that he could pursue Stone. Once Sheriff Roush got turned around, he activated his emergency lights (he could not remember if he also activated his siren). Because of the time it took Sheriff Roush to turn around, he did not see Stone again until he was in the subdivision. That is, once Sheriff Roush turned onto Doe Run Lane, he was able to see Stone about a quarter of a mile away. Sheriff Roush "closed the distance" and was behind Stone as he turned into his driveway. Tr. p. 70.

[4] Once Stone parked his truck, he "immediately" got out and started walking toward his house. *Id.* at 71. Sheriff Roush exited his patrol car and followed him. At one point, Stone looked back at Sheriff Roush, and Sheriff Roush said, "Andy, stop." *Id.* Stone did not stop but rather continued walking toward his house, arriving there before Sheriff Roush could catch up to him. However, "before [Stone] could shut the door, [Sheriff Roush] slid in behind him." *Id.* As Stone went to shut the door, Sheriff Roush "slammed [his] shoulder against the door and inserted [his] leg in the door to keep [Stone] from closing it." *Id.* at 72. After some back and forth at the door, Stone was finally able to shut it, injuring Sheriff Roush's ankle in the process.

[5] Sheriff Roush then waited for Major Burkhardt to arrive on the scene. During this time, Stone "popped his head out [of the door] every once in a while" and told Sheriff Roush "to get a warrant." *Id.* at 73. Eventually Sheriff Roush and Major Burkhart "made entry" into Stone's house and arrested him. *Id.* at 59.

[6]     Thereafter, the State charged Stone with Level 6 felony resisting law enforcement (fleeing by using a vehicle) and Level 5 felony battery resulting in bodily injury to a public-safety official.

[7]     At a thirty-five-minute jury trial, *see id.* at 90, Major Burkhardt and Sheriff Roush were the only two witnesses to testify. During closing arguments, the prosecutor argued that Stone committed resisting law enforcement as follows:

> [Sheriff Roush] had his lights on . . . maybe had his siren on. Was clearly close enough towards the end for Mr. Stone to see what was going on, and it seems to me that it indicates that Mr. Stone knew that the Sheriff was back there and had his lights on, and as soon [as] he got out of the car [he] started heading to the house.

*Id.* at 88. The prosecutor then argued that Stone committed battery resulting in bodily injury to a public-safety official as follows:

> And then he committed the battery by closing the door on the Sheriff. He just did. He didn't want to deal [with] the Sheriff, and he closed the door on him, and he hit him. He touched him with that door.

*Id.* Defense counsel responded to the prosecutor as follows:

> The resisting law enforcement with a vehicle, the Sheriff testified he turned his lights on, but didn't even visually catch up with him for almost a quarter mile. When he did catch up to him, they were already at my client's home, where he did stop. And as far as [the prosecutor] pointing out that my client immediately got out of his car as proof that he knew the Sheriff was behind him,

well, that's what people do when they get to their house. They get out of their car, and they go inside. It doesn't mean anything.

The battery. I mean this is pretty simple. The Sheriff testified that he slid behind him as the door was closing. The door was already closing. My client had absolutely no intent in hitting the Sheriff. Absolutely none. The Sheriff put himself in that position. And as far as the back and forth once the Sheriff had his foot in the door, I think that's a little overblown by [the prosecutor]. My client was merely keeping the door from opening, and the Sheriff was trying to get -- get the door to open. There was no back and forth, there was no battery. There was nothing.

*Id.* at 90-91. Notably, Stone did not argue that he had the right to use reasonable force to resist Sheriff Roush's unlawful entry into his home pursuant to the Castle Doctrine, which is codified at Indiana Code section 35-41-3-2(i)(2), or ask for such a jury instruction.

[8] The jury found Stone guilty as charged, and the trial court sentenced him to an aggregate term of four years.

[9] Stone now appeals his convictions.

# Discussion and Decision

[10] Stone contends that there is "insufficient evidence to rebut the 'Castle Doctrine' affirmative defense" to his conviction for battery resulting in bodily injury to a public-safety official. Appellant's Br. p. 24. The Castle Doctrine is an affirmative defense to the crime of battery on a public-safety official when that

official has unlawfully entered a person's dwelling. *Cupello v. State*, 27 N.E.3d 1122, 1124 (Ind. Ct. App. 2015). Our legislature codified the Castle Doctrine in the self-defense statute at Indiana Code section 35-41-3-2(i) as follows:

> A person is justified in using reasonable force against a public servant if the person reasonably believes the force is necessary to:
>
> * * * * *
>
> > (2) prevent or terminate the public servant's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle . . . .

[11] Stone concedes that he did not raise the Castle Doctrine as an affirmative defense at trial or request a jury instruction but claims that we should nevertheless address this issue under the fundamental-error doctrine. Appellant's Br. p. 24 n.8. An error is fundamental, and thus reviewable on appeal, if it "made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (quotation omitted). These errors create an exception to the general rule that a party's failure to raise an issue at trial results in waiver of the issue on appeal. *Id.* This exception, however, is "extremely narrow" and encompasses only errors so blatant that the trial judge should have acted independently to correct the situation. *Id.*

[12]    There are two problems with Stone's fundamental-error argument. The first problem is that Stone's defense at trial was inconsistent with the Castle Doctrine affirmative defense. That is, the defense theory at trial was that "there was no battery" because Stone "had no idea" that Sheriff Roush was behind him when he shut the door.[1] Tr. pp. 55, 91. In order for Stone to have raised the Castle Doctrine affirmative defense at trial, he should have acknowledged that he used reasonable force against Sheriff Roush, i.e., battered him, but argued that he was justified in doing so to prevent or terminate Sheriff Roush's unlawful entry into his house. *See Melendez v. State*, 511 N.E.2d 454, 457 (Ind. 1987) ("An affirmative defense admits all the elements of the crime but proves circumstances which excuse the defendant from culpability."). Stone did the opposite. Because the defense theory at trial was that Stone did not do anything wrong, there was simply no basis in the record for this affirmative defense. *Cf. Cupello*, 27 N.E.3d at 1126 (in a case in which we reversed the defendant's conviction for battery on a law-enforcement officer, the defendant argued at trial that "the placement of Constable Webb's foot inside the threshold of the door constituted an unlawful entry of his dwelling, and, therefore, [he] had a statutory right to use reasonable force against Constable Webb to terminate the entry into his home").

---

[1] Stone also suggests that "[t]here is insufficient evidence to prove the elements of Battery upon Sheriff Roush," Appellant's Br. p. 24, but he does not further develop such an argument.

[13]     The second problem is that even if there was a basis in the record for the Castle Doctrine affirmative defense, Stone does not say what action the trial court should have taken. The fundamental-error doctrine encompasses only errors so blatant that the trial judge should have acted independently to correct the situation. *Durden*, 99 N.E.3d at 652. Stone does not say, for example, that the trial court should have sua sponte instructed the jury on the Castle Doctrine, or sua sponte entered judgment on the evidence, or sua sponte ordered a new trial. Because Stone did not establish a basis for the Castle Doctrine affirmative defense at trial or tell us what sua sponte action he thinks the trial court should have taken, he cannot avail himself of the fundamental-error doctrine on appeal.

[14]     Stone also argues that the evidence is insufficient to support his resisting-law-enforcement conviction because "[s]imply trying to close the door . . . does not constitute . . . Resisting" when the police unlawfully enter a dwelling. Appellant's Br. p. 28. But this argument fails to recognize that Stone was charged with, and convicted of, resisting law enforcement for fleeing using a vehicle. This occurred **before** the incident at his front door. The State pointed out Stone's mistake in its appellee's brief, *see* Appellee's Br. p. 29 ("Defendant cites to the incorrect statutory citation and language for resisting law enforcement."), and Stone did not file a reply brief to respond to this argument. Stone does not raise any other sufficiency argument concerning this conviction, such as that the evidence is insufficient to prove that he knowingly or

intentionally fled from Sheriff Roush in his truck. Stone's sufficiency claim for his resisting-law-enforcement conviction thus fails.

[15] Affirmed.

Mathias, J., and Crone, J., concur.