# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 18 2020, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John A. Kindley
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Travis Pugh,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 18, 2020<br><br>Court of Appeals Case No.<br>19A-CR-998<br><br>Appeal from the Clay Superior Court<br><br>The Honorable J. Blaine Akers, Senior Judge<br><br>Trial Court Cause No.<br>11D01-1803-F4-253 |

**Bailey, Judge.**

# Case Summary

[1] A jury convicted Travis Pugh ("Pugh") of Theft, as a Level 6 felony,[1] and Auto Theft, a Level 6 felony,[2] and in the second trial stage, a bench trial, Pugh was convicted of Unlawful Possession of a Firearm by a Serious Violent Felon, a Level 4 felony.[3] He challenges the convictions upon the theft counts tried to the jury, presenting the sole issue of whether the trial court abused its discretion by refusing to exclude a rebuttal witness who had failed to honor a subpoena to testify during the State's case-in-chief. We affirm.

# Facts and Procedural History

[2] In 2018, sixty-nine-year-old Stephen Lucas ("Lucas") was living at the Brazil, Indiana residence of his stepfather, Tim Dove ("Dove"). Lucas was a collector of guns and coins, some of which he kept in a safe and closets at the Dove residence. Pugh became acquainted with Lucas in the course of some transactions at a car dealership. Lucas frequently visited the dealership, and Pugh sometimes stopped by the Dove residence without a specific invitation. At some point, Pugh learned that Lucas had some valuable collections.

---

[1] Ind. Code § 35-43-4-2(a)(1).

[2] I.C. § 35-43-4-2.5(b)(1).

[3] I.C. § 35-47-4-5.

[3] On the morning of January 20, 2018, Lucas was home alone sleeping. Dove had been temporarily admitted to a nursing home but had left his truck available for use by some family members. When Lucas awoke, he saw Pugh and questioned him as to why he was there. Pugh claimed that the door had been unlocked and he was checking on Lucas's well-being. Pugh left without incident, but Lucas called the police to report the unauthorized entry.

[4] That evening, Pugh returned to the Dove residence, accompanied by Cortney Fortner ("Fortner"), Kirstie Stanley ("Stanley"), and Dylan Sinn ("Sinn"). Pugh had told Fortner to distract Lucas so that the men could take Lucas's coins. Stanley was carrying a bottle of vodka and drinking heavily. When Lucas answered his doorbell to find two women whom he did not know, he allowed them entry because he recognized Pugh.

[5] The women asked for a drink and a tour of the house; Lucas complied with the requests. Eventually, Lucas and the women entered the master bathroom and Stanley asked to bathe in the Jacuzzi. Lucas seated himself on a bath chair and Fortner stripped down to her bra and panties and sat on Lucas's lap. Stanley removed all her clothes and took a bath. After about twenty minutes, Sinn entered the bathroom and insisted that they "had to go." (Tr. Vol. III, pg. 35.) The women dressed and followed Sinn out.

[6] Fortner drove away in her Jeep, with Stanley as a passenger. Pugh and Sinn took off in Dove's vehicle. The group met up and rented a motel room

together. Fortner observed the men carry approximately twenty guns inside the motel.

[7] Lucas tried to enter his bedroom but found the door locked. Untroubled, he laid down on the sofa and went to sleep. The next morning, Dove's son, Tony Dove ("Tony"), entered the residence and asked Lucas why Dove's truck was missing. Lucas and Tony then forced open the bedroom door lock to discover that many of Lucas's guns were missing. They notified police.

[8] Fortner, Pugh, and Sinn drove to Indianapolis to dispose of the stolen guns. After the guns were delivered and the trio smoked methamphetamine together, Pugh parted ways with Fortner and Sinn. Sinn retained possession of Dove's truck and one gun. Subsequently, Sinn was arrested on an outstanding warrant and found to be in possession of Dove's truck. Further investigation led to Pugh's arrest.

[9] On March 28, 2018, the State charged Pugh with Unlawful Possession of a Firearm by a Serious Violent Felon, Theft, and Auto Theft. On February 6, 2019, the State alleged Pugh to be an habitual offender. Pugh was brought to trial on March 5, 2019, in trifurcated proceedings. Fortner, who had been listed on the State's witness list, testified to the above-described events. Stanley, who had not been listed on the State's witness list, but had been subpoenaed by the State, testified in the rebuttal phase.

[10] The jury found Pugh guilty on the charges of Theft and Auto Theft. After Pugh waived his right to a jury trial on the possession charge, the trial court found

Pugh had committed Unlawful Possession of a Firearm by a Serious Violent Felony; finally, the trial court dismissed the habitual offender allegation upon a motion from the State.

On April 4, 2019, the trial court sentenced Pugh to serve twelve years imprisonment for the possession conviction, with two and one-half years suspended to probation, and two and one-half years for each of the theft convictions. The theft sentences were concurrent sentences, but consecutive to the possession sentence, providing for an aggregate sentence of fourteen and one-half years, with two and one-half years suspended to probation. Pugh now appeals.

# Discussion and Decision

## Standard of Review

Pugh contends that the trial court's denial of his motion to exclude Stanley's testimony is an abuse of discretion. The purposes of pretrial discovery include enhancing the accuracy and efficiency of the fact-finding process and the prevention of surprise by allowing the parties adequate time to prepare their cases. *Beauchamp v. State*, 788 N.E.2d 881, 892 (Ind. Ct. App. 2003). A trial court typically enjoys broad discretion in ruling on discovery violations and we will reverse only if the court has abused its discretion. *Id.*

With regard to rebuttal witnesses, "'nondisclosure [] is excused only when that witness was unknown and unanticipated; known and anticipated witnesses,

even if presented in rebuttal, must be identified pursuant to a court order, such as a pre-trial order, or to a proper discovery request."' *Carrigg v. State*, 696 N.E.2d 392, 398 (Ind. Ct. App. 1998) (quoting *McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 179 (Ind. 1993)). A "known" witness refers to knowledge that the witness exists. *Id.* An "anticipated" witness is one which a party or counsel anticipates the need for at trial. *Id.* "Exclusion of evidence as a discovery abuse sanction is proper where there is a showing that the State engaged in deliberate or otherwise reprehensible conduct that prohibits the defendant from receiving a fair trial." *Beauchamp*, 788 N.E.2d at 892-93.

# Analysis

[14] At the commencement of the jury trial, defense counsel advised the trial court that counsel had been informed, just the prior evening, that the State intended to call Stanley as a witness. Pugh sought exclusion of Stanley's testimony because she had not been included on the State's witness list and he had not deposed her. After hearing argument of counsel, the trial court declined to exclude Stanley as a witness but instructed the State to "have her released [from a treatment facility] and get her here tonight" so that defense counsel could question her. (Tr. Vol. II, pg. 66.)

[15] Stanley did not honor her subpoena and a bench warrant was issued for her arrest. Fortner testified that Pugh had planned the robbery that she, Stanley, and Sinn helped execute. The State rested its case-in-chief, and Pugh testified in his own defense. He testified that he had not stolen anything from Lucas and

denied that he devised a plan for distraction. According to Pugh, he first met Stanley on January 20, 2018, and had provided Fortner with the address of the Dove residence only so that the women could go there and offer Lucas female companionship. He claimed that he did not accompany them but showed up later. He denied going to Indianapolis to dispose of any stolen property.

[16] After the defense rested, defense counsel advised the trial court that Stanley had been located and the State intended to call her as a rebuttal witness. Pugh objected that his decision to testify had been "based on the State resting and Ms. Stanley not testifying." *Id.* at Vol. III, pg. 126. The trial court refused to exclude Stanley as a witness but requested "assurance" from the State that the scope of Stanley's testimony would be limited to "simply rebutting what the witness testified here to [sic]." *Id.* at 127. The State advised that the questions to be posed to Stanley would consist of exploring whether she had met Pugh before January 20, 2018, whether he was at the Dove residence on that date, whether she observed him in the stolen vehicle that evening, and whether he was in Indianapolis the following day.

[17] The State elicited testimony from Stanley that she had met Pugh at Fortner's home; Pugh, Fortner, Stanley, and Sinn rode together to the house of an older man she described as Pugh's friend; she became very intoxicated; and she remembered waking up in a hotel room with a few guns there. During cross-examination, Stanley admitted that she had not seen Pugh take any property, she had heard no discussion of a plan, and she had been offered reduction of her felony charge to a misdemeanor in exchange for her testimony.

[18] Pugh now argues that Stanley's testimony should have been excluded because:

> she had failed to comply with the State's subpoena and had failed to appear to testify for the State during its case-in-chief. What she had to say on rebuttal could have been said in the State's case-in-chief, and therefore should have been presented at that time. The reason for requiring advance disclosure of all witnesses, including rebuttal witnesses, is to prevent surprise. The State already has the considerable advantage of getting to go last in a criminal case. When the defense forms and presents its case, including the crucial decision of whether the defendant will testify or not, it is entitled to be informed of the evidence against him. When a witness is not listed on the State's witness list, and when the judge nevertheless signifies that he will let that witness testify for the State but that witness fails to show up to testify for the State, the defendant in forming and presenting his own case is entitled to rely on the assumption that he is fully informed of the evidence against him.

Appellant's Brief at 7. At bottom, Pugh suggests that he would not have testified if he had known that Stanley was going to do so. Pugh is not contending that the State "engaged in deliberate or otherwise reprehensible conduct," *Beauchamp*, 788 N.E.2d at 893, that denied him a fair trial.

[19] Stanley's testimony was delayed because she did not timely honor her subpoena; this evinces misconduct on her part and not the part of the State. That said, the State should have listed Stanley on its pretrial witness list. Nonetheless, Pugh learned well in advance of his testimony that the State hoped to elicit testimony from Stanley. And he cites no authority for the proposition that the severe discovery sanction of witness exclusion may be

imposed because a witness's recalcitrance factored into a defendant's decision to testify or not to testify.

[20] Even assuming that the trial court abused its discretion in the admission of evidence, "[a]n error is harmless when it results in no prejudice to the 'substantial rights' of a party." *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (citing Indiana Trial Rule 61).[4] The basic premise of the rule is that "a conviction may stand when the error had no bearing on the outcome of the case." *Id.* Here, the jury heard Lucas's testimony that he awoke to find Pugh in his house; Pugh returned that evening uninvited; and Lucas discovered, as soon as he gained entry to his bedroom, that many of his guns were missing. The jury also heard Fortner's testimony that Pugh had identified Lucas as a target and enlisted her help with a plan of distraction. Fortner further testified that she saw Pugh drive away in Dove's truck; she saw Pugh in possession of numerous guns; and she, Sinn, and Pugh went to Indianapolis to dispose of the guns. This evidence is such that we can conclude that Stanley's testimony of her drunken escapade (while denying knowledge of a criminal plan or having observed any taking of property) "had no bearing on the outcome of the case." *Durden*, 99 N.E.3d at 652. Allowing Stanley's testimony was, at worst, harmless error.

---

[4] Indiana Trial Rule 61 provides in relevant part: "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

# Conclusion

Pugh has failed to demonstrate an abuse of the trial court's discretion warranting reversal of his convictions.

Affirmed.

Kirsch, J., and Mathias, J., concur.