## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Brooke N. Russell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rondell Goe,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 19, 2018

Court of Appeals Case No.
18A-CR-850

Appeal from the Ripley Circuit
Court

The Honorable Ryan J. King,
Judge

Trial Court Cause No.
69C01-1701-F5-2

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Rondell Gene Goe (Goe), appeals his sentence following his guilty plea to attempted possession of child pornography, a Level 5 felony, Ind. Code §§ 35-41-5-1(a); -42-4-4(b).

We affirm.

# ISSUES

Goe presents two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion at sentencing; and

(2) Whether the Goe's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

On October 11, 2016, a woman went to the Indiana State Police post in Ripley County, Indiana, and reported to Detective Brent Miller (Detective Miller) that seventy-seven-year-old Goe had molested her daughters—eight-year-old L.H. and five-year-old K.H. On the same day, L.H. and K.H. were taken to the Region 15 Child Advocacy Center for a forensic interview. Detective Miller was present during the interview. Eight-year-old L.H. alleged that Goe had "touched her private [part] on her skin" and also, one time while staying at Goe's house after her tonsils surgery, Goe lifted "her shirt and sucked on and rubbed her boobs." (Appellant's App. Vol. II, p. 21). Five-year-old K.H. stated

that Goe had used his hands to touch her "private parts" on more than one occasion. (Appellant's App. Vol. II, p. 21).

[5] Later that day, Detective Miller went to Goe's residence to talk to Goe. Goe agreed to talk to Detective Miller inside his police vehicle. While seated in the front passenger seat and engaging in small talk, Goe's "arm hit the door lock. [Detective Miller] told [Goe] that he could unlock the door and could get out of the car anytime he wanted." (Appellant's App. Vol. II, p. 33). Shortly thereafter, Goe agreed to having his conversation taped.

[6] Goe informed Detective Miller that he has known L.H. and K.H. since birth, that the girls often visited his home, and the girls referred to him as "Papa Gene," and his wife as "Nana Joy." (Appellant's App. Vol. II, p. 34). Goe stated that October 10, 2016, he had "touched the girls vagina's a few times, especially K.H. to see if she was wet in her pants or not." (Appellant's App. Vol. II, p. 22). Also, on October 10, 2016, Goe admitted asking L.H. to pull up her shirt so that he could see her new bra. Goe added that on another occasion, he asked L.H., "let me see those[?]" and when L.H. lifted her sweater, he used his tongue to lick L.H.'s "nipples." (Appellant's App. Vol. II, p. 22). Goe informed Detective Miller that he was "fascinated by the girls growing up." (Appellant's App. Vol. II, p. 22). Goe furthermore stated that he had once touched L.H.'s vagina while they "were on the tractor and he stopped when [L.H.] told him that it made her feel uncomfortable. [Goe] said his hand was there because they crossed a large ditch and he did not want [L.H.] to fall" from the tractor. (Appellant's App. Vol. II, p. 22).

On October 18, 2016, Detective Miller and another officer went to Goe's home to arrest Goe. Detective Miller handcuffed Goe and sat him in the front passenger seat of his vehicle. On the way to the Ripley County Jail, Detective Miller and Goe engaged "in small talk," and Goe stated that "whatever happened" he "was done helping people and baby sitting [sic] for people." (Appellant's App. Vol. II, p. 34). Goe additionally stated that he had been "a photographer for the church and had photographed [L.H.] on the day she was brought home from the hospital after being born." (Appellant's App. Vol. II, p. 34).

On October 19, 2016, a Family Case Manager (FCM) with the Indiana Department of Child Services contacted Detective Miller and informed him that she had spoken with Goe at the Ripley County Jail. Goe informed the FCM that the incident when he licked L.H.'s breasts, he was just "curious to see what would happen." (Appellant's App. Vol. II, p. 35). Goe also informed the FCM that he had "taken thousands of pictures" of L.H. and K.H., but "had deleted them all." (Appellant's App. Vol. II, p. 35). The FCM reported that Goe saved the "photographs . . . on a separate drive in his personal computer." (Appellant's App. Vol. II, p. 35).

On October 20, 2016, Detective Miller executed a search warrant at Goe's residence. Other items, including Goe's personal computer, were seized during the search. On October 25, 2016, Detective Miller handed over Goe's computer to Sergeant Matt Simmons (Sgt. Simmons) for a forensic examination. On December 5, 2016, Sgt. Simmons returned Goe's computer,

and he also issued Detective Miller a report on his findings. According to the report, there were "several images of child porn in the computers [sic] thumbnail cache and in the hard drives deleted space. These images depicted small nude children engaged in sexual acts." (Appellant's App. Vol. II, p. 37). According to the report, Goe's internet searches included "underground underage girl images, xhasmter/underage nudist, prenudist children, outlaw nude preteen girls, and xhamster/[A]sian preschool girl tutored sex." (Appellant's App. Vol. II, p. 37).

[10] On December 8, 2016, Detective Miller, accompanied by another detective, went to Goe's house to return some previously seized items, except for Goe's computer. Detective Miller informed Goe that he had found "some things on his computer," and he asked Goe if would freely talk. (Appellant's App. Vol. II, p. 37). Goe agreed, and he got into the front passenger seat of Detective Miller's vehicle. Detective Miller sat in the driver's seat, and the other detective sat in the back seat. Goe explained to the detectives that while working for his former employer, "one of the boss' sons, who was also an employee[], was accused of viewing child porn while at work." (Appellant's App. Vol. II, p. 37). Goe asserted that he was instructed to investigate the accusations. Goe stated that he "would remember the [websites] the son was viewing[,] and he would research them at home." (Appellant's App. Vol. II, p. 37). Goe then "cited one of the websites as purenudist." (Appellant's App. Vol. II, p. 37). Goe admitted that he still explores "the websites even though he is no longer employed for the company." (Appellant's App. Vol. II, p. 37). Goe admitted that he personally

searched for "adult porn," but the other searches relating to "child porn were made for research." (Appellant's App. Vol. II, p. 37). The detectives afterward left Goe's home. During the course of his investigation, Detective Miller learned from Goe's former employer that Goe was employed from January 3, 1994, through March 3, 2006. After that, Goe worked part-time until March 31, 2014.

[11] On January 12, 2017, the State filed an Information, charging Goe with one Count of attempted possession of child pornography, a Level 5 felony, and one Count of possession of child pornography, a Level 5 felony. On January 19, 2017, the State amended the Information, adding a third Count, Level 6 felony attempted possession of child pornography. On January 24, 2018, ahead of his jury trial, Goe pleaded guilty by an agreement, to the Level 5 felony attempted possession of child pornography, with sentencing left open to the trial court. In exchange, the State agreed to dismiss the remaining two Counts. The trial court took Goe's plea under advisement and ordered preparation of a Pre-sentence Report (PSI).

[12] On March 21, 2018, the trial court conducted Goe's sentencing hearing. At the start of the hearing, the trial court accepted the plea agreement and entered judgment of conviction. The trial court then asked Goe whether he wanted to make any changes or corrections to the PSI and the Supplemental PSI. The only error cited was Goe's address on the PSI. During the hearing, the trial court reviewed the PSI, the Supplement PSI, a letter written by Goe, and

several letters sent from Goe's family members and friends. Goe, Nana Joy, and Detective Miller, testified.

[13] At the close of the evidence, the trial court ultimately found three aggravating factors: that Goe's character is that of a person with a high propensity to reoffend; Goe's lack of remorse; and the facts and circumstance of the crime go far beyond what is necessary to prove the offense. The trial court identified one mitigating factor—Goe had pleaded guilty to his crime. Nevertheless, the trial court concluded that the "aggravators substantially outweighed the mitigator[]." (Tr. Vol. II, p. 78). Consequently, the trial court sentenced Goe to five years in the Department of Correction.

[14] Goe now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Sentencing*

[15] Goe argues that the trial court abused its discretion at sentencing by "relying on three unsupported aggravating factors to enhance" his sentence to five years. (Appellant's Br. p. 10). Sentencing decisions "rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotations and citation omitted). A trial court may abuse its discretion by

failing to enter a sentencing statement, entering findings of aggravating and mitigating factors unsupported by the record, omitting factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id.* at 490-91. "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491.

### A. *High Risk to Reoffend*

[16] In the written sentencing statement, the trial court found:

> a. [Geo's] character is that of a person with a high propensity to reoffend. First, [Goe] has also been charged with 3 [C]ounts of [c]hild [m]olest[ing], which are currently pending. As it relates to those allegations, the State presented a taped statement wherein [Goe] admitted to placing his tongue on the nipple of an [eight-year-old-girl]. Second, the facts herein show that [Goe] consistently pursued child pornography; searches found on just the first page of the supplement to the presentence investigation include "young incest tube,", "[C]hinese schoolgirl tutor sex", "young teen forced rape", and "cute Asian preteen schoolgirl thumbs". These factors show that [Goe] is sexually attracted to children and has the character of someone that is likely to act upon his deviant sexual attraction. This is a significant aggravating factor of great weight.

(Appellant's App. Vol. III, pp. 48-49). Goe argues that before his taped statement, he was not given his *Miranda* warnings. Goe therefore contends that the trial court abused its discretion in admitting his taped confession. In

response, the State contends that the "strict rules of evidence do not apply in sentencing hearings." (Appellees' Br. p. 17).

[17] "Indiana Evidence Rule 101(c) explicitly states that the rules of evidence, other than those with respect to privileges, 'do not apply in . . . [p]roceedings relating to . . . sentencing." *Hines v. State*, 856 N.E.2d 1275, 1281 (Ind. Ct. App. 2006), *trans. denied*. The rationale for the relaxation of evidentiary rules is that, in a trial, the issue is whether a defendant is guilty of having engaged in certain criminal conduct, and the rules of evidence limit the evidence to that strictly relevant to the crime charged. *Thomas v. State*, 562 N.E.2d 43, 47 (Ind. Ct. App. 1990). At sentencing, however, the evidence is not confined to the narrow issue of guilt. *Id*. Rather, the task is to determine the type and extent of punishment. *Id*. "This individualized sentencing process requires possession of the fullest information possible concerning the defendant's life and characteristics." *Id*. Nevertheless, the defendant is entitled to be sentenced only on the basis of accurate information, and the defendant retains the right to refute any inaccurate or improper information. *Dillon v. State*, 492 N.E.2d 661, 663 (Ind. 1986). The sentencing process should be fair to each individual defendant, and a sentence based on materially untrue assumptions violates due process. *Id*. (citations omitted).

[18] Turning to his contention, Goe did not object to the admission of his taped statement at sentencing, as such, his claim is waived on appeal. *See Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018) ("A party's failure to object to an alleged error at trial results in waiver."). Aside from his waiver, we find that Goe's

taped statements devoid of *Miranda* warnings, was relevant at sentencing. At his sentencing, despite pleading guilty to the Level 5 felony attempted possession of child pornography, Goe testified "I have no sexual desire towards children." (Tr. Vol. II, p. 32). In response, the State introduced Goe's taped statement, to rebut Goe's attempt at preserving a notion that he lacked sexual desire for children.

[19] Goe further asserts the admission of the Supplemental PSI, which included his lengthy internet search history of child pornography, did not "authenticate, validate, or explain any or all of the supposed searches made on [his] computer . . . Therefore, reliance on this spreadsheet is misplaced, speculative and an abuse of discretion." (Appellant's Br. p. 15). Goe failed to make that very same argument at sentencing, therefore, he waives this issue on appeal. See *Durden*, 99 N.E.3d at 651. Notwithstanding his waiver, we address his claim. Here, the Supplemental PSI entailing Goe's numerous child pornography searches accessed on his personal computer, was related to the nature of Goe's offense and his character. Under the relaxed rules of sentencing hearings, the Supplemental PSI was properly admitted for the trial court's consideration.

### B. *Lack of Remorse*

[20] Goe challenges the trial court's determination that he lacked remorse at sentencing. A trial court may find a defendant's lack of remorse to be an aggravating factor. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. A defendant lacks remorse when he displays disdain or recalcitrance, the equivalent of "I don't care." *Id*. This has been distinguished

from the right to maintain one's innocence, *i.e.*, "I didn't do it." *Id*. Although lack of remorse is a proper aggravator, it is not a weighty aggravator, and instead is considered an aggravator of only modest significance. *See Georgopulos v. State*, 735 N.E.2d 1138, 1145 (Ind. 2000).

[21] At his sentencing hearing, Goe apologized to his family "for the situation [he had] created." (Tr. Vol. II, p. 29). On cross-examination, the State confronted Goe with a letter he had written to the trial court nine days before the sentencing hearing. Goe wrote: "I Rondell Gene Goe, accept responsibility for the computer where child pornography is alleged to exist. However, I at NO time deliberately attempted to access, download or possess child pornography for personal reasons." (Appellant's App. Vol. III, p. 78). In the letter, Goe blamed the presence of child pornography internet search history on a "malicious virus." (Appellant's App. Vol. III, p.78). Instead of taking ownership of his actions, Goe's tactic at sentencing involved shifting the blame to a malicious virus as the source of the child pornography located on his computer. Indeed, the trial court correctly construed Goe's letter lacking any remorse to a crime to which he had already pleaded guilty.

[22] Further, we note that ahead of sentencing, Goe had requested his friends and family to write letters to the trial court. The trial court stated, "the tenor of these letters suggest that this is just an allegation and they believe you to be innocent. I don't know where they would reach that sort of predisposition, had they not been informed, uh, [] inaccurately." (Tr. Vol. II, p. 73). For instance, one letter read, "[Goe] has always expressed great disdain against anyone that

has harmed any child. It is because of his character and his protective attitude toward children that I find it hard to believe that [Goe] could engage in the charges of attempted possession of child pornography." (Tr. Vol. II, p. 74). Reacting to that letter, the trial court stated

> Again, the way I read this is this is someone who doesn't understand that this is a conviction and you're here for sentencing. Up until a few days ago or your statement that you just gave, uh, there was no real responsibility taken. Certainly, a lack of remorse. And it's further shown a lack of responsibility and remorse from all those letters and then the letters also have this over-arching belief that somehow this was something that just popped up on your computer, it was some accident and there are a thousand (1,000) searches here and this is no accident. It's easily verifiable it's not an accident, that's why the case pled.

(Tr. Vol. II, p. 74). Indeed, those letters confirmed the trial court's belief that Goe lacked remorse. We give substantial deference to the trial court's evaluation of remorse because the trial court has the ability to directly observe the defendant and is in the best position to determine whether the remorse is genuine. *Corralez v. State*, 815 N.E.2d 1023, 1025 (Ind. Ct. App. 2004). Accordingly, the trial court was justified in finding Goe's lack of remorse as an aggravating factor.

### B. *Nature and Circumstances of the Crime.*

Our supreme court has found the "nature and circumstances of a crime [to be] a proper aggravating circumstance" where the defendant's conduct extends beyond the material elements of the offense. *Gomilla v. State*, 13 N.E.3d 846,

853 (Ind. 2014). Turning to the facts of this case, the State tendered a Supplemental PSI which consisted of a 21-page excel spreadsheet showing a total of 1,405 internet searches on Goe's personal computer. While some searches were benign, most of them related to child pornography. On the first page of the excel spreadsheet, the trial court selected a couple of sites and read them aloud: "'I Cream Pied My Daughter', 'Young Incest Tube', 'Tiny Teen with Big Mound', 'Preteen Girls Clothing Panties', 'Nineties School Girl Tutor Sex', 'Preteen Nudist Family', 'Young Teen Forced Rape', 'Cute Asian Preteen School Girl Thumbs'". (Tr. Vol. II, p. 76). One image located in Goe's computer depicted a "four-year-old being penetrated by an adult male." (Tr. Vol. II, p. 78). In the sentencing statement, the trial court found that particular photo the "most egregious depiction imaginable." (Appellant' App. Vol. III, p. 79). Here, we conclude that based on the Supplemental PSI, the trial court did not abuse its discretion in identifying the nature and circumstances of Goe's crime to be a proper aggravating circumstance.

## II. *Inappropriate Sentence*

Goe additionally contends that his five-year sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The "nature of offense" compares the defendant's actions with the required showing to sustain

a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing that both prongs of the inquiry favor a revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id.*

[25] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). A Level 5 felony carries a possible sentence of one to six years, with an advisory sentence of three years. I.C. § 35-50-2-6(b). Here, the trial court sentenced Goe to five years.

[26] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). As noted, the police found "images of child porn in [Goe's] computer[] thumbnail cache and in the hard drives deleted space." (Appellant's App. Vol. II, p. 37). "These images depicted small nude children, who appeared to be less than twelve (12) years of age, engaged in sexual acts. One image appeared to be a naked female toddler with an adult male penis near her vagina. Another image depicted a young girl who appeared

to be approximately 8 (eight) years of age being vaginally penetrated by an adult male." (Appellant's App. Vol. II, p. 20). The trial court called attention to the fact that Goe's Level 5 felony attempted possession of child possession charge "could've been proven by one search." (Tr. Vol. II, p. 77). According to the Supplemental PSI, there were approximately 1,405 internet searches, and most of those searches related to child pornography.

[27] As for his character, Goe claims that he "is a [seventy-seven-year-old] man who has no prior criminal history." (Appellant's Br. p. 19). He adds that he is also "a veteran who was active in his community, church, and has the support of his friends and family. [] He has worked all of his adult life, and an aggravated sentence is an undue hardship on [his] family." (Appellant's Br. p. 19). While Goe presents himself as a stalwart member of the community, it is evident that Goe was not leading the sterling life he describes. At sentencing the trial court found that Goe's internet searches relating to child pornography had surreptitiously occurred "over a period of time." (Tr. Vol. II, p. 77). Also, during the investigation of the instant offense, Goe admitted to inappropriately touching two girls, and he has three pending charges of child molesting against him.

[28] Even after pleading guilty to the instant offense, Goe continued to show poor character by attempting to evade responsibility by stating that child pornography located on his home computer was a result of a malicious virus. The trial court aptly noted that it was evident from the letters submitted on

Goe's behalf that Goe continued to claim innocence among his close circle of family and friends, despite pleading guilty to the charged offense.

[29] After due consideration of the sentencing decision, we cannot say that the five-year sentence is inappropriate in light of the nature of Goe's offense or his character.

# CONCLUSION

[30] Based on the above, we conclude that the trial court did not abuse its discretion while sentencing Goe, and Goe's sentence is not inappropriate in light of the nature of the offense and his character.

[31] Affirmed.

[32] Vaidik, C. J. and Kirsch, J. concur