# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 30 2019, 8:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle O. Sheff
Sheff Law Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of E.B. and W.B. (Minor Children),

    and

A.C. (Father),

*Appellant-Respondent,*

      v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

May 30, 2019

Court of Appeals Case No.
18A-JT-3021

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Larry E. Bradley, Magistrate

Trial Court Cause Nos.
49D09-1807-JT-803
49D09-1807-JT-804

**Bailey, Judge.**

# Case Summary

A.C. ("Father") appeals[1] the trial court's order involuntarily terminating his parental rights to E.B. and W.B. (collectively, "the Children"), twins born on May 11, 2017.

We affirm.

# Issues

Father raises several due process and statutory issues which we consolidate and restate as follows:

> (1) Whether the State violated Father's due process rights by failing to follow statutorily required procedures in the Child in Need of Services ("CHINS") proceedings;
>
> (2) Whether the trial court erred when it denied Father's Motion to Dismiss the termination proceedings for failure to hold a timely fact-finding hearing; and
>
> (3) Whether the trial court clearly erred when it terminated Father's parental rights.

---

[1] Mother, J.B., voluntarily relinquished her parental rights and does not actively participate in this appeal.

# Facts and Procedural History

[4] On May 17, 2017, the Indiana Department of Child Services ("DCS") filed CHINS petitions in which it alleged that the Children were born testing positive for amphetamine, benzodiazepines, methamphetamine, and opiates, and that J.B. ("Mother") tested positive for those same drugs. The petitions further alleged that Father was incarcerated and unable to ensure the Children's safety and well-being. In September of 2016, Father had been charged with various counts of burglary, criminal mischief, and criminal trespass. Father had been arrested and incarcerated for those charges on or around January 3, 2017. Father has remained incarcerated since that date. He ultimately pled guilty to four counts of burglary and was sentenced accordingly. Father is not scheduled to be released from prison until approximately December of 2020.

[5] On October 3, 2017, the trial court conducted a CHINS fact-finding hearing at which Mother failed to appear and Father appeared by counsel. Father's counsel notified the court that Father "waive[d] his right to fact-finding, noting that he is incarcerated." Ex. at 60. In an October 12 order on "administrative rule hearing," the court reset the "administrative Ruling to 10/27/17" for the purpose of consulting with the magistrate judge "regarding potential adjudication of the children to be a Child [sic] in Need of Services on the basis of father's admission on or about 10/3/07," because the October 3 "order is not specific to whether the Court adjudicated the children [as CHINS], and this matter is reset to clarify whether the acceptance of father's admission is a de

facto adjudication." *Id*. at 63. On October 27, the trial court issued an order finding the Children to be CHINS, stating:

> On October 3, 2017[,] [Father] waived his right to factfinding. The Court accepted the waiver but did not adjudicate the children to be in [need of] services. [Mother] could not be located and a Default hearing was held for her.
>
> The Court hereby adjudicates the children, [E.B. and W.B.,] to be in need of services.

*Id*. at 71. The Children were placed in relative care where they have remained.

[6] On July 2, 2018, DCS filed two separate petitions to terminate parental rights as to the two children. Mother executed a waiver of her parental rights and was dismissed from the termination cases. The trial court appointed a public defender for Father and set a pretrial conference for August 3. At the August 3 pretrial hearing, Father requested mediation and the court granted that request. The court also, sua sponte, set the matter for a final pretrial hearing on October 12 and a final hearing on November 15. At the October 12 pretrial hearing, DCS notified the court that mediation had been canceled, and Father stated that he wanted "to proceed with the termination hearing." Father's App. at 63. Father's attorney also "confirm[ed] the trial dates in this matter." *Id*.

[7] On October 23, 2018, Father filed a Motion to Dismiss the termination case because the fact-finding hearing had not been commenced within ninety days of the date of the petition as required by Indiana Code Section 31-35-2-6(a)(1). In

an order dated October 24, the trial court denied[2] the Motion to Dismiss, noting "that IC 31-35-2-6(a) states 'when a hearing is requested.' Mediation was requested on August 3, 2018, and the Court also set this matter for trial sua sponte on that date." *Id.* at 68.

[8] On November 15, 2018, the trial court conducted the fact-finding hearing on the termination petitions. The State produced evidence that, in addition to the crimes for which Father was currently incarcerated, Father also had been convicted and incarcerated for various crimes in November 2014, June 2015, May 2016, and October 2016. On November 27, 2018, the trial court issued its order terminating Father's parental rights to the Children and noted that Father's "pattern of criminal activity and convictions" made it "reasonable to believe that he would not be available to parent after his current incarceration." Appealed Order at 2. This appeal ensued.

# Discussion and Decision

## Due Process/Procedural Errors

[9] Father maintains that the trial court's termination of his parental rights violated his procedural due process rights because DCS failed to follow the procedures required by state law.

---

[2] The order contains a scrivener's error in that it initially states that it "GRANTS" the motion to dismiss. *Id.* at 68. However, that statement is immediately followed by the statement that "The Court denies respondent father's Motion to Dismiss…," and Father concedes that the motion was denied.

> When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause. *J.T. v. Marion County Office of Family and Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000), *trans. denied*. Although due process has never been precisely defined, the phrase embodies a requirement of "fundamental fairness." *Id.* Our legislature has enacted an interlocking statutory scheme governing CHINS proceedings and the involuntary termination of parental rights proceedings. *A.P. v. Porter County Office of Family and Children*, 734 N.E.2d 1107, 1112 (Ind. Ct. App. 2000), *trans. denied*. This statutory scheme is designed to protect the rights of parents in raising their children while allowing the State to effect its legitimate interest in protecting children from harm. *Id.* The CHINS and involuntary termination statutes are not independent of each other. *Id.*

*L.N. v. Boone Cty. Div. of Family & Children* (*In re L.V.N.*), 799 N.E.2d 63, 67 (Ind. Ct. App. 2003) (superseded by statute on other grounds).

[10] First, Father contends that the trial court violated his due process rights by failing to adjudicate the Children as being CHINS "as to" him. Father's Br. at 32. However, "[b]ecause a CHINS determination regards the status of the child, a separate analysis as to each parent is not required in the CHINS determination stage." *N.L. v. Ind. Dep't of Child Servs.* (*In re N.E.*), 919 N.E.2d 102, 106 (Ind. 2010).

[11] Second, Father asserts that DCS violated his due process rights by failing to provide him with services the court deemed necessary. However, that assertion is factually inaccurate. The evidence shows that, on October 31, 2017, the trial court ordered Father to participate in the Father Engagement Program; DCS

referred Father to that program; Father participated in that program for approximately one month; and Father then chose to cease participation in the program before completion.[3]

# Timing of Fact-Finding Hearing

[12] Father maintains that the trial court erred in denying his Motion to Dismiss the termination petitions on the grounds that a fact-finding hearing was not commenced within ninety days of those petitions. Indiana Code Section 31-35-2-6 states:

> (a) Except when a hearing is required after June 30, 1999, under section 4.5 of this chapter, the person filing the petition shall request the court to set the petition for a hearing. Whenever a hearing is requested under this chapter, the court shall:
>
>> (1) commence a hearing on the petition not more than ninety (90) days after a petition is filed under this chapter; and
>
>> (2) complete a hearing on the petition not more than one hundred eighty (180) days after a petition is filed under this chapter.
>
> (b) If a hearing is not held within the time set forth in subsection (a), upon filing a motion with the court by a party, the court shall

---

[3] Father initially maintained on appeal that DCS also violated his due process rights by failing to file a termination petition as to E.B. However, Father withdrew that contention in his reply brief because the evidence shows that such a petition was filed. Reply Br. at 5.

dismiss the petition to terminate the parent-child relationship without prejudice.

[13] The State contends—and the trial court appears to have held—that Father invited the error of an untimely fact-finding hearing by requesting mediation on August 3, 2018. The State also raises the issue of waiver. Invited error typically forecloses appellate review, whereas waived claims generally may still be reviewed for fundamental error. *Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019). We hold that Father did not invite the error by requesting mediation, but he did waive the error by failing to timely object to the date of the factfinding hearing.

*Invited Error*

[14] Generally, a party's failure to object to, and thus preserve, an alleged trial error results in waiver of that claim on appeal. *Id.* at 558. However, when a failure to object is accompanied by the party's affirmative requests of the court, "it becomes a question of invited error." *Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014).

> This doctrine—based on the legal principle of estoppel—forbids a party from taking "advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct." *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005).

*Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018). To establish invited error,

> there must be some evidence that the error resulted from the appellant's affirmative actions as part of a deliberate, well-

informed trial strategy. A passive lack of objection, standing alone, is simply not enough. And when there is no evidence of counsel's strategic maneuvering, we are reluctant to find invited error based on the appellant's neglect or mere acquiescence to an error introduced by the court or opposing counsel.

*Batchelor,* 119 N.E.3d at 558 (quotation and citations omitted).

[15] Father did not invite the error of an untimely fact-finding hearing by requesting mediation. At the time Father requested mediation, there were still approximately two months left within which to conduct the fact-finding hearing pursuant to state law. Father's request for mediation in no way prevented DCS from requesting the scheduling of, or the court from commencing, a timely fact-finding hearing.

[16] Moreover, to the extent the trial court based its order on its belief that the statute does not require that the fact-finding hearing be commenced within ninety days of the date of the petition unless and until a party requests such a hearing, the trial court erred. When interpreting a statute,

> [w]e must first determine whether the statutory language is clear and unambiguous. [*Dykstra v. City of Hammond*, 985 N.E.2d 1105, 1107 (Ind. Ct. App. 2013), *trans. denied*.] If it is, "we will not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings." *Id*. However, if a statute is susceptible to multiple interpretations, it is deemed ambiguous and open to judicial construction. *Id*. In interpreting the statute, "we will attempt to determine and give effect to the intent of the legislature, and to that end, we read provisions of a statute together so that no part

is rendered meaningless if it can be harmonized with the remainder of the statute." *Id*.

*Taylor v. State*, 7 N.E.3d 362, 365 (Ind. Ct. App. 2014). Statutes must be construed in a logical and reasonable way, "with each section being considered with reference to all other sections." *Gibson v. Ind. Dep't of Correction*, 899 N.E.2d 40, 58 (Ind. Ct. App. 2008), *trans. denied*. And "[i]t is well settled that the use of the word 'shall' is construed as mandatory language." *Taylor*, 7 N.E.3d at 365 (quotations and citation omitted).

[17] First, we note that the statute clearly and unambiguously provides that it is the responsibility of the DCS attorney, a court-appointed special advocate, or a Guardian ad Litem ("GAL")—not the parents—to request a fact-finding hearing. Indiana Code Section 31-35-2-6(a) provides that "*the person filing the [termination] petition shall*[4] request the court to set the petition for a hearing." (emphasis added); *see also* I.C. § 31-35-2-4(a) (defining who may file a termination petition). DCS cannot rely on its own failure to fulfill its statutory duty of requesting a hearing to excuse the untimely fact-finding hearing in this case. *See Durden*, 99 N.E.3d at 651.

---

[4] We note that, prior to a July 1, 2012, amendment, the statute contained permissive language; it stated that the person filing the termination petition "may request the court to set the petition for a hearing." I.C. § 31-35-2-6(a) (2012). Our legislature evinced a clear intent to make that request mandatory when it subsequently changed the word "may" to "shall." *See* P.L. 48-2012, SEC. 68.

[18] Second, the statute also unambiguously requires that the requested hearing be commenced "not more than ninety (90) days *after a [termination] petition is filed*," rather than ninety days after a hearing is requested, as the State maintains. I.C. § 31-35-2-6(a)(1) (emphasis added). Moreover, we observe that the commencement of the hearing is triggered by the mandatory filing of a request for such a hearing. I.C. § 31-35-2-6(a)(1) (providing that "whenever" a DCS attorney, a special advocate, or a GAL has fulfilled his/her mandatory duty to request a hearing, "the court shall" commence the hearing not more than ninety days after the petition was filed). Construing the statute logically and with all its parts in harmony, we conclude that the statute requires that whoever filed the termination petition must also file a request for a fact-finding hearing in time for the hearing to be held in compliance with the statutory deadlines. *Taylor*, 7 N.E.3d at 365.

### Waiver

[19] Although Father did not invite the error of an untimely hearing, he did fail to object to the untimely fact-finding hearing date both when it was set—i.e., August 3, 2017—and again at the October 12 pretrial hearing. To preserve a claim for review, "counsel must object to the trial court's ruling and state the reasons for the objection." *Durden*, 99 N.E.3d at 651. Moreover, the objection must be made "at the earliest opportunity when [the] trial is set beyond the time limitations." *Hampton v. State*, 754 N.E.2d 1037, 1029 (Ind. Ct. App. 2001) (discussing the requirement to file a timely objection in the analogous context of a request for a speedy criminal trial), *trans. denied*.

> This gives the court an opportunity to cure the alleged error, which, in turn, can result in enormous savings in time, effort and expense to the parties and the court, including avoiding an appeal and retrial. If the trial court overrules the objection, the appellate court benefits from a sufficiently-developed record on which to base its decision.

*Durden*, 99 N.E.3d at 651 (quotation and citations omitted). There are exceptions to the general waiver rule, such as where the error was fundamental. *Id*. at 652. An error is fundamental, and thus reviewable on appeal, if it "made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Id*.

[20] Because Father failed to timely object to the date of the fact-finding hearing, he waived his appeal on the issue of an untimely hearing. *See C.G.G. v. Ind. Dep't of Child Servs.* (*Matter of N.C.*), 83 N.E.3d 1265, 1267 (Ind. Ct. App. 2017) (finding parent waived his right to challenge the date of the fact-finding hearing by agreeing and failing to object to the setting of that hearing date beyond ninety days). Moreover, Father has not shown that any error in the date the fact-finding hearing was commenced was fundamental. The fundamental error exception to the waiver rule is "an extremely narrow one, available only when the record reveals clearly blatant violations of basic and elementary principles of due process, and the harm or potential for harm [from the error] cannot be denied." *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002) (quotation and citation omitted); *see also Marion-Adams Sch. Corp. v. Boone*, 840 N.E.2d 462, 468

(Ind. Ct. App. 2006) ("It is a cardinal rule of appellate review that the appellant bears the burden of showing reversible error by the record, as all presumptions are in favor of the trial court's judgment.").

Father has not shown that the evidence presented at—or the outcome of—the termination proceeding would have been any different if it had taken place within the statutory deadline; that is, he has shown no harm that he suffered from the untimely commencement of the fact-finding hearing.

# Termination of Parental Rights

## *Standard of Review*

Father maintains that the trial court's order terminating his parental rights was clearly erroneous.  We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*.  However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination.  *Schultz v. Porter Cty. Off. of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).  Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened.  *Id.*  Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental

rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[23] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

(A) that one (1) of the following is true:

* * *

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.

* * *

(C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2).  DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights.  *Id.* DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'"  *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[24] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses.  *Peterson v. Marion Cty. Off. of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*.  Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment.  *Id.*  Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[25] Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon.  When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review.  *Bester v. Lake Cty. Off. of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005).  First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment.  *Id.* "Findings are clearly erroneous only when the record contains no facts to

support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[26] Father challenges several of the trial court's findings of fact and conclusions of law. Father does not challenge the conclusion that he had failed to remedy the conditions that resulted in the Children's removal; rather, he asserts that the court erred in determining that his parent/child relationship is a threat to the Children and that termination is in the Children's best interests. However, because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS need only establish *either* that Father failed to remedy conditions *or* that the parent/child relationship posed a threat. The trial court held that DCS established the former, Father does not challenge that conclusion, and that conclusion is sufficient to satisfy Indiana Code Section 31-35-2-4(b)(2)(B). Thus, we proceed to Father's challenge to the findings of fact and the conclusion that termination was in the Children's best interests.

*Findings of Fact*

[27] Father asserts that the evidence did not support the following findings of fact:

9. [Father] has never seen the children, and has no experience at being a father;

10. [Father] wrote the family case manager five to six times inquiring about the children.

11. Although [Father] has been incarcerated continuously for approximately two years, no evidence was presented of his undergoing any prison classes or programs to better himself.

12. A Father Engagement Program was referred for [Father] who did not engage in the program for a month prior to refusing to continue because he no longer saw the point.

Appealed Order at 2. However, with respect to each of those findings except number nine, Father does not dispute that the findings are correct statements, only that they are taken out of context and/or leave out other pertinent information. His contentions amount to requests that we reweigh the evidence, which we will not do. *In re D.D.*, 804 N.E.2d at 265.

[28] Regarding finding number nine, Father does not dispute that he has never seen the Children, but he points out that he does have experience fathering his older child who lived with him in Texas for a time. However, even assuming the latter portion of the court's finding number nine is clearly erroneous, the decision of the trial court is supported by the remainder of the findings. Thus, we may treat the portion of finding number nine challenged by Father as surplusage. *Lasater v. Lasater*, 809 N.E.2d 380, 397 (Ind. Ct. App. 2004). Moreover, Father has shown no prejudice from the finding that would warrant reversal of the court's judgment on appeal. *Id.*

## Best Interests of the Children

[29] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Off. of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224; *see also A.M. v. Ind. Dep't of Child Servs. (In re A.G.)*, 45 N.E.3d 471, 479 (Ind. Ct. App. 2015) (stating the recommendation by both the case manager and child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests), *trans. denied*.

[30] Here, Father was incarcerated and therefore unavailable to parent the Children at the time they were initially removed from Mother's care, and he remained incarcerated and unavailable to parent at the time of the termination hearing. Those facts support the conclusion that termination was in the Children's best interests. *Castro*, 842 N.E.3d at 374; *see also K.T. v. Marion Cty. Dep't of Child Servs. (In re C.T.)*, 896 N.E.2d 571, 585 (Ind. Ct. App. 2008) (quotation and

citation omitted) (noting that "[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children"), *trans. denied*.

[31] Further, there was evidence that, in addition to his current convictions and incarceration, Father had been convicted and incarcerated in November 2014, June 2015, May 2016, and October 2016. Thus, the trial court found that Father "has a pattern of criminal activity and convictions." Appealed Order at 2. That finding supports the trial court's conclusion that "it is reasonable to believe that [Father] would not be available to parent after his current incarceration." *Id.*; *see In re C.T.*, 896 N.E.2d at 578 (noting DCS need not rule out every possibility that a parent will not change his behavior; rather it need establish only that there is a reasonable probability that the parent will not do so).

[32] And, finally, both the GAL and the Family Case Manager testified that they believed termination of Father's parental rights was in the Children's best interests given that Father had never met the Children; he was unavailable to parent the Children due to his incarceration; the Children needed stability; and the Children were well-bonded with their preadoptive family.

[33] The trial court did not clearly err when it concluded that termination of Father's parental rights is in the Children's best interests. Father's contentions to the contrary amount to requests that we reweigh the evidence, which we cannot do. *In re D.D.*, 804 N.E.2d at 265.

# Conclusion

[34] There were no procedural errors that denied Father due process of law. And, by failing to lodge a timely objection, Father waived his contention that the termination proceedings should have been dismissed for failure to commence a fact-finding hearing within ninety days of the filing of the petitions. Finally, the evidence supported the trial court's findings, and its findings supported its judgment terminating Father's parental rights.

[35] Affirmed.

Riley, J., and Pyle, J., concur.