

FILED

Apr 12 2018, 6:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antonio M. Merritt,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 12, 2018<br><br>Court of Appeals Case No.<br>49A02-1708-CR-1736<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa F. Borges, Judge<br><br>Trial Court Cause No.<br>49G04-1510-MR-38159 |

**Najam, Judge.**

## Statement of the Case

[1]     Antonio M. Merritt appeals his convictions for murder, a felony, following a jury trial, and his adjudication as a habitual offender. Merritt's conviction followed his second jury trial. At his first trial, one witness testified that she

witnessed Merritt murder the victim, and another witness testified that he observed Merritt shortly after the murder with the murder weapon, but the jury resulted in a hung verdict. At his second trial, those two witnesses could not be located and did not appear to testify. As a result, the trial court permitted, without objection, their statements from the first trial to be submitted to the second jury.

[2] On appeal, Merritt alleges that the trial court committed fundamental error when it did not *sua sponte* admonish the second jury to not speculate about the reasons those two witnesses might have been unavailable to testify while their prior statements were being read into evidence. We hold that the trial court had no obligation to make such an admonishment without a request by one of the parties. Thus, we affirm Merritt's convictions.

## Facts and Procedural History

[3] In October of 2015, Merritt ran a "drug house" out of his residence in Indianapolis. Tr. Vol. II at 241. Jordan White and Elizie Wombles frequented Merritt's residence and were friends. In the evening hours of October 21 and into the early morning hours of October 22, White, Wombles, and Merritt were at Merritt's residence. Wombles was smoking synthetic marijuana while White sold cocaine to visitors. White brought a revolver to the house, but he left it in the kitchen.

[4] About twenty minutes after White had made his last sale of cocaine, Merritt "told [White] to give him some" cocaine. *Id.* at 128. White refused, and

Merritt became "angry." *Id.* Merritt went into the kitchen, picked up the revolver, and went into the living room. Merritt began to argue with White, and Wombles left the room and went into the kitchen. Wombles then "heard a gunshot" and "ran out the back door." *Id.* at 133. Later, another visitor to the house found White dead on the living room floor.

[5] As Wombles fled the scene, Merritt "intercepted" her on the sidewalk. *Id.* at 134. Merritt had the revolver with him and was "threatening to kill" Wombles and "her kids." *Id.* at 163, 183. Merritt then had Wombles call her stepson, Connor Hendricks, to give them a ride to Merritt's mother's apartment. In the car, Wombles told Connor that Merritt had just shot White. And, at the apartment, Wombles called her sister, and her sister told her that White had been found dead. Wombles then confronted Merritt and told him, "You killed that boy." *Id.* at 140.

[6] Wombles' friend, Rusell Church, later picked Wombles and Merritt up from the apartment. Merritt wanted Church to give him and Wombles a ride to Fountain Square in Indianapolis to buy more drugs, and Church agreed. Church observed Merritt with "a larger revolver." Tr. Vol. III at 48. Church further observed that two of the revolver's chambers were empty. On the way out of the apartment building, Church observed Merritt sell the revolver to another person. En route to Fountain Square, Wombles ran out of the vehicle as it was stopped for traffic. Merritt did not pursue her.

[7] On October 27, 2015, the State charged Merritt with White's murder. At his ensuing jury trial, Wombles and Church both testified against Merritt. However, the trial resulted in a hung jury.

[8] Following the hung jury but prior to his retrial, Merritt approached fellow inmate Ryan Ivy and offered Ivy $1,000 to kill Wombles. In an ensuing conversation with Ivy, Merritt stated:

> there came a point when the guy, the victim, was ready to leave. [Merritt] said that . . . [White] had some and I wanted it. So he said, I shot him in the back. He said, I shot that nigga in the back with my three eight. And he said the bullet bounced around inside of him like a ping-pong ball until it hit his heart. He said that [Wombles] then went for the back door.
>
> * * *
>
> He said that[,] after he shot him, he said that she ran to the back door. He caught up with her and told her that she could stay here with him or—talking about the victim—or go with him. . . .

*Id.* at 214-15. Merritt also told Ivy that he "sold the gun" outside his mother's apartment. *Id.* at 216. Ivy informed the local prosecutor of Merritt's statements.

[9] Prior to the commencement of Merritt's second trial, neither Wombles nor Church could be located. As a result, the court declared them unavailable. During the second jury trial, the State moved to have the prior testimony of both Wombles and Church admitted into evidence, which the court permitted

without objection.[1]  Following the presentation of that testimony, Ivy testified that Merritt had attempted to hire Ivy to kill Wombles.

[10]    The jury found Merritt guilty of White's murder, and the trial court adjudicated Merritt to be a habitual offender.  The court then entered its judgment of conviction and sentenced Merritt to an aggregate term of eighty-five years.  This appeal ensued.

## Discussion and Decision

[11]    Merritt asserts on appeal that the trial court committed fundamental error when it did not *sua sponte* admonish the jury to not speculate about the reasons for the unavailability of Wombles and Church.  As our Supreme Court has explained:

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due

---

[1]  In having the prior statements read into the record, the court had interns from the Marion County Prosecutor's Office play the role of the prior witnesses by reading their portions of the testimony; the court had the deputy prosecutor play the role of the original prosecutor by reading the original prosecution questions; the court had Merritt's attorney play the role of the original defense counsel and read the original defense questions; and the court played the role of itself in reading its original statements.  Apparently, the trial court did not want to give the jury the impression that a prior trial had occurred, even though the court had also provided the jury with the written records of the prior statements as exhibits, and the testimony made obvious references to a prior trial, such as identifying Merritt in court while he wore a different outfit. Moreover, Ivy's testimony during the second trial made it clear, if it was not already at that point, that a prior trial had occurred.  We acknowledge the trial court's concern with informing the jury that a prior trial had occurred, but once the court decided to admit the prior statements, the cat was out of the bag.  In any event, Merritt does not argue on appeal that the admission of the prior statements, or the manner in which those statements were orally presented to the jury, was fundamental error.

process. The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. This exception is available only in egregious circumstances.

*Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (quotation marks and citations omitted). "To prove fundamental error," the appellant must show "that the trial court should have raised the issue *sua sponte* . . . ." *Taylor v. State*, 86 N.E.3d 157, 162 (Ind. 2017).

[12]   Further, fundamental error in the evidentiary decisions of our trial courts is especially rare. For example, our Supreme Court has explained that

> an error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error. Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt. That is the case here. The only basis for questioning [the defendant's] conviction lies not in doubt as to whether [he] committed these crimes, but rather in a challenge to the integrity of the judicial process. We do not consider that admission of unlawfully seized evidence *ipso facto* requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.

*Brown*, 929 N.E.2d at 207.

[13]   Merritt's argument on appeal is, in essence, that it was obvious from Wombles' and Church's prior statements that they were made during a prior trial and that, in light of Ivy's ensuing testimony during the second trial, without an

admonishment from the court the jury was free to speculate that Merritt had caused Wombles' and Church's absences, which in turn denied him access to a fair and impartial jury. That is, as in *Brown*, the only basis Merritt presents for challenging his convictions lies not in doubt as to whether he committed these crimes but, rather, in a challenge to the integrity of the judicial process. *See id.* There is no claim that the evidence against him was not what it appeared to be. Thus, "the claimed error does not rise to the level of fundamental error." *Id.*

[14]   Further, we cannot agree with Merritt's argument that the trial court is the source of any error that did occur. Our case law has long required the parties to request an admonishment from the court—not to have the court act *sua sponte*—if the parties think such an admonishment might be appropriate. *E.g.*, *Humphrey v. State*, 680 N.E.2d 836, 839-40 (Ind. 1997). Indeed, Indiana Evidence Rule 105 expressly requires the parties to object in such circumstances, stating:

> If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, *on timely request*, must restrict the evidence to its proper scope and instruct the jury accordingly.

(Emphasis added.)

[15]   The reason for putting that burden on the parties and not on the trial court is obvious: admonishments are double-edged swords. On the one hand, they can help focus the jury on the proper considerations for admitted evidence. *Id.* However, on the other hand, they can draw unnecessary attention to

unfavorable aspects of the evidence. *See, e.g.*, *McCollum v. State*, 582 N.E.2d 804, 811 (Ind. 1991) (stating that requesting an admonishment "could have drawn unnecessary attention" to undesired commentary). The risk calculus inherent in a request for an admonishment is an assessment that is nearly always best made by the parties and their attorneys and not *sua sponte* by our trial courts.

[16] And the record here demonstrates that the trial court properly did not interject itself on Merritt's behalf. While Ivy testified that Merritt had attempted to hire him to kill Wombles, he provided no such testimony with respect to Church, who also could not be located prior to Merritt's second trial. The trial court may well have determined that Merritt's attorney thought an admonishment with respect to the unavailability of both Wombles and Church was not worth the risk of drawing unnecessary attention to their absences. We decline to say that the trial court here was obliged to interject itself in that assessment on Merritt's behalf. Thus, we affirm Merritt's convictions.

[17] Affirmed.

Robb, J., and Altice, J., concur.