

FILED

Oct 26 2020, 10:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Susan D. Rayl
Michael Ray Smith
Hand Ponist Horvath Smith & Rayl
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hayden J. Nix,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 26, 2020<br><br>Court of Appeals Case No.<br>20A-CR-521<br><br>Appeal from the Hancock Superior Court<br><br>The Honorable Terry K. Snow, Judge Pro Tempore<br><br>Trial Court Cause No.<br>30D01-1901-F3-209 |

**Najam, Judge.**

## Statement of the Case

[1] Hayden J. Nix appeals his conviction for rape, as a Level 3 felony, following a jury trial. Nix raises four issues for our review, which we restate as the following three issues:

1. Whether Nix preserved for appellate review his arguments that he was denied an impartial jury and that the trial court erred when it denied his motion for a change of venue.

2. Whether the trial court committed fundamental error when it did not *sua sponte* prohibit the State from asking certain questions of witnesses, which Nix asserts amounted to a drumbeat repetition of the victim's testimony.

3. Whether the trial court abused its discretion when it denied Nix's motion for funds to hire a mitigation specialist to aid his defense at sentencing.

[2] We affirm.

## Facts and Procedural History

[3] In October of 2017, when they were freshmen at New Palestine High School and on fall break, fourteen-year-old R. and her friend B. went to a party together. As R. and B. could not drive, they enlisted the assistance of a male acquaintance from the high school, E., who drove the two girls to the party. After a few hours, the girls wanted to leave, but E. was "unable to drive." Tr. Vol. II at 109. E. then asked his friend, Nix, whom the girls did not know, to drive all three of them home.

[4] Around 3:00 a.m., Nix drove the three of them to E.'s house first. There, E. got out of the car, and B. also got out of the car to use the restroom. Nix then moved from the driver's seat to the backseat with R. He began touching R.'s

legs and ignored her requests for him to stop. Nix then forced himself on top of R., removed both of their pants, held her down, and raped her. During the attack, R. was "yelling." *Id.* at 120. She was able to open the nearest car door "[t]wice," but Nix "was able to pull it shut before [R.] could get it open all the way." *Id.* at 139-40.

[5] Meanwhile, E. told B. that they had to enter his house through the back door. When the two arrived at the back door, it was locked, and E. told B. that she should "just hang out with me in the woods." *Id.* at 183. B. thought E.'s request was "weird," but she went with him. *Id.* After several minutes, B. wanted to go back home, and she went back to the car and knocked on the back window, which B. could not see through. Nix opened the door, told her to go away, and then shut the door again. B. then went back to the woods with E. and, after some more time, again knocked on the window of the car, only to have Nix again open the door, tell her to go away, and close it again. B. thought this was "weird," and she was "uncomfortable." *Id.* at 187-88. She also heard R. and Nix "arguing," "yelling," and "being loud," but she could not make out what was being said. *Id.* at 188. After B. tried to enter the car a third time and failed, she began walking home.

[6] At that point, E. intervened and picked up B. in the car. Nix and R. were in the backseat when E. picked up B. B. recalled that, at that time, "[n]o one was talking" inside the car. *Id.* at 190. After getting to R.'s house, R. and B. both exited the car. Some time in the next day or two, R. told B. that Nix had raped

her in the back of the car. At R.'s insistence, B. promised not to tell anyone. Later, R. told another of her school friends, J., of the attack.

[7] Following the attack, R. quit cheerleading and softball. Her attendance at the high school faltered, and her grades dropped. She began to "isolate[]" herself from her friends and family. *Id.* at 130. In February of 2018, R.'s grandmother engaged her about what had happened. R. then told her grandmother about the attack, and R.'s grandmother promised not to tell anyone, a promise which R.'s grandmother kept for about six months. Then R.'s grandmother informed R.'s father, who reported it to the Hancock County Sheriff's Department.

[8] In January of 2019, the State charged Nix in relevant part with rape, as a Level 3 felony. In October, Nix moved for a change of venue because, in the six months prior to his motion, he had been sentenced in three other, similar cases that had been reported in the local media. At a hearing on that motion, the State argued that there was no evidence of actual prejudice at the moment, but if that evidence came up during the voir dire of prospective jurors the court could reconsider the motion. The court then denied Nix's motion.

[9] During the ensuing voir dire, six prospective jurors[1] reported having read about Nix's other cases and suggested that they had already formed an opinion as to his guilt in the instant case. The court then permitted, without objection from

---

[1] Those prospective jurors were jurors 5, 31, 34, 51, 53, and 55. Another prospective juror, juror 30, stated that, if Nix had "been in here before for the same thing" and "he's gotten off [for] insufficient evidence," he must be "[g]uilty." Tr. Vol. II at 44. The court removed juror 30 for cause. *Id.* at 67.

Nix, to have those prospective jurors share a waiting room with other prospective jurors without instructing them not to discuss the matter and not to read media reports. The parties and the court then discussed which prospective jurors to strike. Following that discussion and additional voir dire, none of the six prospective jurors who had read about Nix in the media reports were selected to sit on his jury. *Id.* at 78.

[10] During Nix's jury trial, R. testified about Nix's attack on her. After R. testified, B. testified about her observations and recollections from that night. The State also called J., R.'s grandmother, and an investigating detective, who each testified that R. had told them of the attack. Nix did not object to this testimony.

[11] The jury found Nix guilty of rape, as a Level 3 felony, and the trial court set the matter for a sentencing hearing. Nix, who was represented by private counsel, then asked the court for public funds to aid in the costs of obtaining a "mitigation specialist" to assist Nix with his arguments at sentencing. Appellant's App. Vol. II at 179. The court denied Nix's request. Nonetheless, Nix was able to obtain a mitigation specialist, who filed a report with and then testified to the court, stating among other things that Nix suffered from "fetal alcohol spectrum disorder." Tr. Vol. III at 192.

[12] During its closing argument to the court at the sentencing hearing, the State argued in relevant part as follows:

> I want to specifically comment with regard to [Nix being]
> asked [in the preparation of the pre-sentence investigation
> report] . . . why he believed he was . . . convicted in this case
> and . . . [Nix] indicated . . . that . . . he feels the jury members
> knew about his prior . . . convictions, which le[d] them to convict
> him [in] the [present] case. I want to be very clear that at no
> point in time during the trial did the [S]tate elicit any information
> with regard to [his prior convictions]. . . . [N]ot at any point
> during voir dire . . . was there discussion put forth by the [S]tate
> as to prior convictions.

Tr. Vol. III at 207. Nix's counsel responded to that part of the State's argument by asserting:

> In terms of the [S]tate's argument about . . . the jury, and I don't
> know why it was brought up because it's really kind of neither
> here nor there, but they brought it up so I'm going to comment
> on it. . . . [N]o one talked about his prior cases during the trial.
> That is true. However, after the trial when the defense and the
> [S]tate spoke to the jury, the jury foreperson said[,] "I know
> about his prior cases. He's already proven himself to be a piece
> of sh[*]t." And there were other jurors back there [who]
> concurred and also said that they had read in the news about
> [Nix's] other cases. So, even though it wasn't brought up during
> the trial . . . [,] based off of what we were told in the jury room
> that was something that was considered. And I relayed that
> information to [Nix]. And so, that's likely why he said that in
> the PSI . . . .

Id. at 209-10. After hearing the evidence and arguments, the court stated that it did not find Nix's evidence or arguments persuasive, and the court then sentenced him to sixteen years, with three years suspended to probation. This appeal ensued.

# Discussion and Decision

### *Issue One: Nix's Impartial-Jury*
### *and Change-of-Venue Arguments*

[13]   We first address Nix's several arguments that he was denied an impartial jury and his related argument that he should have received a change of venue. As for his impartial-jury arguments, Nix recognizes that the right to an impartial jury is protected by the state and federal constitutions. Appellant's Br. at 41. He argues that he was denied that right for numerous reasons. But the premise of his argument is his counsel's statement to the court, at the close of the sentencing hearing, that he had been told by the jury foreperson after the trial that several jurors knew about Nix's prior cases. From that statement, Nix infers that some of the prospective jurors who acknowledged during voir dire that they had read about Nix in the local media must have exposed the other prospective jurors to those reports. According to Nix, that exposure reveals that the trial court erred in the manner in which it conducted the voir dire and in not instructing the prospective jurors not to discuss matters and not to research the defendant while they were not in the courtroom.

[14]   There are a number of flaws with Nix's argument. First, the premise of his argument—his own counsel's statement to the court at the close of sentencing—is not evidence, and Nix cites no other portion of the record to demonstrate any apparent bias in a juror from his trial. *Deen-Bacchus v. Bacchus*, 71 N.E.3d 882, 886 (Ind. Ct. App. 2017). Indeed, Nix did not respond to the jury foreperson's purported disclosure after the trial by immediately informing the court and

calling the jurors to question them and make a record. Rather, he waited several months to make a passing comment about it at the close of the sentencing hearing, and he uses that passing comment on appeal to engage in speculation about what it might mean. We conclude that Nix has not met his burden of persuasion on appeal.

Second, Nix was the party who used voir dire to inquire about potential biases the prospective jurors might have had based on pretrial publicity. He did not request that voir dire be individualized. If any exposure to Nix's criminal history among the unaware prospective jurors occurred during voir dire, Nix cannot show that it is not the direct result of his own questioning. As such, he invited any error in exposing the prospective jurors, and "invited error is not reversible error." *B.C. v. Ind. Dep't of Child Servs. (In re J.C.)*, 142 N.E.3d 427, 432 (Ind. 2020) (per curiam).

Third, Nix's unsubstantiated arguments and invited error notwithstanding, he did not request the court to separate the prospective jurors before the court removed them from the courtroom. He did not ask the court to admonish the prospective jurors. He did not object to the procedure the court employed with the prospective jurors or request an alternative procedure in any respect. For all of those reasons, Nix has not preserved his arguments on appeal that the court failed to empanel an impartial jury.

Nonetheless, Nix asserts that we should review his claim that the court failed to empanel an impartial jury because his claim of error is both structural and

fundamental. Nix's assertion that we should review his unpreserved arguments because they allege structural error is a nonstarter. Structural error means that the error is never harmless; that is, once an appellant shows structural error, he can skip the usual need to show that the error is also not harmless. *E.g.*, *Durden v. State*, 99 N.E.3d 645, 653 (Ind. 2018). But our Supreme Court has made clear that "[t]he invited-error doctrine precludes a remedy for . . . structural error." *Id.* at 655. The Court has further made clear that "almost any claim, structural or not, can be forfeited through procedural default." *Whiting v. State*, 969 N.E.2d 24, 32 (Ind. 2012). Accordingly, we will not consider Nix's invited and unpreserved claims under the rubric of structural error.

[18] Likewise, Nix's claim that we must review his arguments on this issue for fundamental error is also not correct. "An error is fundamental, and thus reviewable on appeal, if it made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Durden*, 99 N.E.3d at 652 (quotation marks omitted). But invited error "forecloses appellate review altogether," even for claims of fundamental error. *Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019). And, in any event, given that Nix's arguments are nothing more than speculation, he has not shown that a fair trial was impossible. As such, we decline Nix's invitation to consider his fundamental error argument or his other arguments regarding jury impartiality.

[19] This brings us to Nix's related claim that he was entitled to a change of venue based on pretrial publicity. We review the trial court's denial of Nix's motion

for an abuse of discretion. *Myers v. State*, 887 N.E.2d 170, 181 (Ind. Ct. App. 2008), *trans. denied*. We will affirm the trial court's denial of a motion for a change of venue in a criminal trial where the defendant "fails to demonstrate that the jurors were unable to render an impartial verdict." *Id.* at 182. As explained above, Nix cites no evidence in the record to show that the empaneled jury was not impartial. Moreover, before the trial court denied Nix's motion for a change of venue, the State pointed out that, if an impartial jury could not be empaneled, Nix could renew the motion, which he did not do. Instead, he accepted the jury. Accordingly, we cannot say the court abused its discretion when it denied Nix's motion for a change of venue.

### Issue Two: Purported Drumbeat Evidence

[20] Nix next asserts that the trial court committed fundamental error when it did not *sua sponte* prohibit the State from questioning B., R.'s grandmother, an investigating officer, and J. regarding whether R. had told them that Nix raped her. According to Nix, the testimony of those witnesses was "drumbeat repetition" used by the State "to vouch for [R.'s] credibility." Appellant's Br. at 50, 54. Again, he did not object to the testimony at trial.

[21] Nix misapplies our fundamental-error doctrine here. Again, fundamental error makes "a fair trial impossible." *Durden*, 99 N.E.3d at 652. And "fundamental error in the evidentiary decisions of our trial courts is especially rare." *Merritt v. State*, 99 N.E.3d 706, 709-10 (Ind. Ct. App. 2018), *trans. denied*. That is because fundamental error

> is extremely narrow and encompasses only errors so blatant that the trial judge should have acted independently to correct the situation. At the same time, *if the judge could recognize a viable reason why an effective attorney might not object, the error is not blatant enough to constitute fundamental error.*

*Durden*, 99 N.E.3d at 652 (emphasis added; quotation marks and citations omitted).

[22] An attorney's decision not to object to certain evidence or lines of questioning is often a tactical decision, and our trial courts can readily imagine any number of viable reasons why attorneys might not object. *Cf. Merritt*, 99 N.E.3d at 710 ("The risk calculus inherent in a request for an admonishment is an assessment that is nearly always best made by the parties and their attorneys and not *sua sponte* by our trial courts."). Fundamental error in the erroneous admission of evidence might include a claim that there has been a "fabrication of evidence," "willful malfeasance on the part of the investigating officers," or otherwise that "the evidence is not what it appears to be." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). But absent an argument along those lines, "the claimed error does not rise to the level of fundamental error." *Id.*

[23] Nix does not assert that the evidence against him was not what it appeared to be. Rather, his argument is simply that the purportedly erroneous admission of this evidence implicated his due-process rights because it made the State's evidence appear stronger than it might have actually been. *See* Appellant's Br. at 56-57. But Nix's argument on this issue would turn fundamental error from a rare exception to the general rule for appellate review. There are often tactical

reasons for an attorney not to object to the admission of evidence or the questioning of witnesses, and, however discerning our trial courts may be, they are not expected or required to divine the mind of counsel. And, if a defense counsel lacks a tactical reason for not objecting to prejudicial evidence that would not have been admitted with a proper objection, the defendant has the post-conviction process available to him to pursue relief. Accordingly, we reject Nix's argument on this issue and conclude that it fails to meet the high bar of fundamental error.

### Issue Three: The Trial Court's Denial of Nix's Motion for Funds to Hire Mitigation Specialist

[24] Nix's final argument on appeal is that the trial court abused its discretion when it denied his motion for funds to hire a mitigation specialist to assist Nix's arguments at the sentencing hearing. In particular, Nix asserts that the court abused its discretion because it had found him indigent at his initial hearing and had appointed him a public defender. Although his family later hired a private attorney for him, he continues, he remained indigent.

[25] The trial court denied Nix's motion on the ground that he apparently had access to funds to obtain private counsel and therefore could cover his own costs for a mitigation specialist. Nix's argument on appeal is simply a request for this Court to reassess the facts and circumstances that were before the trial court, which we will not do. We therefore affirm the trial court's denial of Nix's motion for funds to hire a mitigation specialist.

# Conclusion

[26]     In sum, we affirm Nix's conviction in all respects.

[27]     Affirmed.


Bradford, C.J., and Mathias, J., concur.